## HOME MIXTURE GUANO COMPANY *v.* TILLMAN.

1. In an action against a corporation, to recover compensation for the plaintiff's services as its president, an allegation in the petition, that, at the time of the organization and the first election of the officers of the corporation, "it was tacitly understood that fair, reasonable, and adequate salaries [for its officers] would be fixed thereafter, to be paid out of the after-earnings of the company," should have been stricken upon special demurrer, as being a mere conclusion of the pleader, and not an allegation of facts or circumstances upon which issue could be joined.

2. The law will not imply a promise by a private corporation to pay its officers for their usual and ordinary duties. Hence, in order for one to legally recover of such a corporation for his services as its president, it must appear that in the articles of incorporation, or in some by-law or resolution of the board of directors, legally passed, provision was made for the payment of such compensation.

3. The action in the present case being based entirely upon a quantum meruit, the petition should have been dismissed upon general demurrer, notwithstanding an allegation therein that the plaintiff "remained as president" of the defendant corporation "for about two weeks or more" after a by-law or resolution had been passed by the board of directors providing that the president should thereafter be paid a designated sum per annum as a salary, there being no separate count in the petition seeking to recover, under this by-law or resolution, for the services of the plaintiff, as president, rendered after such by-law or resolution was adopted.

Argued February 24,—Decided March 28, 1906.

Complaint. Before Judge Reagan. Muscogee superior court. June 7, 1905.

W. L. Tillman brought an action against the Home Mixture Guano Company, a corporation, to recover the sum of $14,650, for services rendered by him as its president. The petition alleged, that the corporation was organized in June, 1900, with a capital stock of $75,000, which was subsequently increased to $100,000, all

of the stock being subscribed for and paid in by the plaintiff, H. Bussey, and Arthur Bussey, each subscribing for and becoming the owner of one third thereof. In June, 1900, a stockholders meeting was held, at which a board of three directors, consisting of the three stockholders, was elected. On the same day the directors held a meeting, and by a unanimous vote elected the plaintiff as president, H. Bussey as general manager, and Arthur Bussey as secretary and treasurer of the corporation, for the term of one year and until their successors should be elected. These same persons continued as the only stockholders of the company, during the years 1901, 1902, and 1903; and each during those years filled the same office to which he was originally elected. "At the time of the organization of the company and the first election of officers in 1900, no salaries were fixed for any of the officers, but it was tacitly understood that fair, reasonable, and adequate salaries would be fixed thereafter, to be paid out of the after-earnings of the company, and that such salaries should commence and be paid from the date of the organization, to wit, June 19, 1900." H. Bussey and Arthur Bussey are father and son, and during the years above mentioned each owned one third of the capital stock of the corporation and constituted two thirds in number of the board of directors, and because of these facts were able to and did control the action of the company at all stockholders meetings, as well as the action of the board of directors. From June 19, 1900, until July 14, 1904, the plaintiff was president of the defendant company, and carefully and diligently discharged all the duties which devolved upon him as such. "From the date of its organization the business of the company grew, and soon became so extended that it required the use of large sums of money in the manufacture of the product in which the company was engaged, and in the purchase of crude materials, both in this country and in Europe." Being president of the company, the plaintiff "procured and provided all the financial assistance necessary for this purpose, frequently by his own personal indorsement, and put the company on a strong financial basis, through and by means of which it greatly prospered and made large amounts of money for its stockholders;" and "the shares of its capital stock of the par value each of $100.00 were worth and brought in the market in the year 1904 the sum of $216.00 per share." The question of the salaries of the officers

"was held in abeyance until the 8th day of May, 1903, when, at a meeting of the stockholders, when all the stockholders were present and all the shares represented, the question of fixing these salaries came up for disposition, and thereupon, by a unanimous vote of all the stock, the salary of H. Bussey as general manager," and the salary of Arthur Bussey as secretary and treasurer, were each fixed at the sum of $1,800 per annum, "both to commence and be paid from April 1, 1900;" but the stockholders other than the plaintiff "declined and refused to fix and agree on any sum as the salary of the president of said company, over the protest and demand of" the plaintiff that this should be done. After the adjournment of this meeting and on the same day, the plaintiff, because of the action of the majority of the stockholders, determined to resign the office of president, and personally gave notice to the other two stockholders of such determination; whereupon they proposed to him to submit to three disinterested business men the entire question of salaries of officers of the company and how much each was to receive, if anything, "and to abide the decision of said board of arbitration and to continue the business as it had been done in the past." The plaintiff "on said day promptly accepted said proposition as to his own salary as president, . . and agreed to arbitrate the matter of his salary at any time they would appoint, but, inasmuch as the proper authority, the stockholders, had fixed the salary of the general manager and secretary and treasurer, he declined to agree to an arbitration of the salaries which were to be paid these officers." The salaries fixed for the general manager and the secretary and treasurer, beginning April 1, 1900, were paid to each of them out of the funds of the company, and the plaintiff, "relying upon the proposition of said majority stockholders to fix his salary by arbitration, continued to discharge the duties of president of the company." But H. Bussey and Arthur Bussey, the majority stockholders, "notwithstanding [plaintiff's] repeated request so to do, refused to fix any salary for the office of president, . . and failed and refused to also submit the question to arbitration; whereupon [plaintiff] on the 14th day of July, 1904, . . . resigned his said office of president and sold and transferred his holdings of stock" in the corporation. A fair and reasonable sum per annum for the salary of the president of the company, during the time which the plaintiff served as such, is $3,600, "which," for

the time he served, "amounts to the sum of $14,650.00, for the payment of which he has made a demand" on the defendant company, "and the same has been refused."

By an amendment to the petition, the plaintiff alleged, that at a meeting of the stockholders in June, 1902, H. Bussey and Arthur Bussey, being holders of a majority of the stock and being also a majority of the directors, without previous notice to the plaintiff, brought up the question of fixing salaries for certain officers of the company; and, while the plaintiff occupied the chair, they proceeded to have the salaries for the offices filled by themselves fixed, "but made no motion or effort to fix a salary for the office of president;" and "after fixing their salaries they caused the meeting to be adjourned." Such action "was the result of a collusive agreement between [them] to wrongfully withhold from [plaintiff] his just compensation, while paying to themselves the amounts they desired; all of which being done in violation of the understanding between the parties." The two Busseys "wrongfully used their power as a majority to withhold from [plaintiff] the compensation justly due him in his office as president, and wrongfully refused to act in fixing just and adequate compensation for [him], at the same time using their powers to fix their own compensation and to pay themselves out of the funds of the organization." · "From the date of the organization of the defendant company, it required very heavy financial backing. The company was unable to secure the financial assistance necessary, and . . the same was furnished by the petitioner individually and through his connection and influence with financial institutions, and upon his personal indorsement and guaranty of the company's obligations. At different times, and at nearly all times from the organization of the company up to the time that petitioner's connection therewith terminated, said company was obligated to him, either on personal loans or by way of indorsement or guarantee, for large sums of money, ranging from $25,000.00 to $150,000.00, and . . such assistance was necessary to said company and . . its growth and success was based thereon." The financial assistance rendered by plaintiff to defendant "from his personal means, which at times ranged near $100,000.00, from his personal indorsements, which ranged at times from $50,000.00 to $75,000.00, was necessary to the proper conduct and management and the success of the defendant company, and

but for such assistance the company would not have succeeded and prospered as it did." The services thus rendered by plaintiff were "in addition to the other duties and regular duties of the office of president;" and "it was necessary to be done for the protection and success of the defendant company." "The by-laws of the company were silent as to the compensation to be paid the several officers of the company in June, 1902, at which time provision was made, as hereinbefore stated, for the offices filled by said H. Bussey and Arthur Bussey." Arthur Bussey, by and with the consent and collusive action of his father, H. Bussey, paid to himself a salary of $2,400 per annum from the date of the organization of the company, instead of $1,800 per annum as fixed by the resolution of the directors. When, in June or July, 1904, plaintiff, by reason of the conduct of the other two stockholders of the company, determined to sell his stock, "H. Bussey and Arthur Bussey, with others whom they associated with them, became the purchasers of" plaintiff's stock. After the sale of plaintiff's stock had been thus agreed upon, "a meeting of the stockholders and directors . . was held, at which certain resolutions and by-laws were adopted, wherein it was provided that the president of the company should thereafter be paid the sum of $3,600.00 annually, payable monthly," and that the secretary and treasurer should receive a like amount, as salary, per annum. "It was then known, as stated, that [plaintiff] was no longer to hold or occupy the office of president, . . but that such office would thereafter be held and occupied by the said H. Bussey;" but plaintiff "remained as president for about two weeks, or more, after the salary for president had been thus fixed, but it was known and determined that petitioner was not to occupy said position, and .. . would not be the beneficiary of the sum so named." All of this "was the result of a collusive agreement upon the part of H: Bussey and Arthur Bussey to withhold from petitioner just and adequate compensation, or any compensation whatever, for the services which he rendered, and that compensation should only be paid to father and son to the exclusion of petitioner." Such action "upon the part of the majority stockholders and directors constituted a legal fraud in withholding from this petitioner just and legal compensation for the services which he rendered in the upbuilding of the defendant corporation, and in the performance of the duties of the office of president

thereof." The amendment further alleged, that after the stockholders meeting in June, 1902, there was no further meeting of the stockholders until about July 1, 1904, but the plaintiff continued to act as president of the company under his original election as such; and that shortly after he disposed of his stock, H. Bussey wrote, or caused to be written, "minutes of supposed meetings regularly held, and the same were handed to this petitioner to sign. There were no such meetings." While the plaintiff stated that the minutes so prepared were purely imaginary, when they were presented to him for his signature he signed them, "in order that it might appear that the corporation regularly held its meetings as it should have done under the law."

The defendant demurred to the petition upon various grounds, the first being that the averments in the petition were insufficient in law to constitute a legal cause of action. Other grounds, which were but amplifications of this general ground, and specifically pointed out wherein the petition showed that the plaintiff was not entitled to recover upon either an express or an implied contract, were, that the petition showed corporate action upon the questions of the salaries and compensation to be paid the officers of the corporation, and that no salary was provided for the president, and therefore the plaintiff had no right of action against the defendant; and that the averments of the petition were insufficient in law to raise an implied promise to pay the plaintiff upon a quantum meruit for services rendered as president. The defendant also specially demurred to the allegation in the original petition, that, "At the time of the organization of the company and the first election of officers in 1900, no salaries were fixed for any of the officers, but it was tacitly understood that fair, reasonable, and adequate salaries would be fixed thereafter," etc., as being insufficient to show an express agreement to pay the plaintiff a salary as president, and as being insufficient to raise an implied promise to pay him for such services; and upon the further ground that "the defendant could not plead to the averment 'it was tacitly understood,' as the action and words of the board of directors are not set forth in the petition, from which can arise any tacit understanding, and the expression 'tacitly understood' is but the conclusion of the pleader; wherefore the averment is insufficient in law." The defendant also specially demurred to the allegations in reference to the proposition

to submit the questions as to the salaries for officers of the corporation to arbitration, as they related to no corporate action, but merely to private conversations between the shareholders after the stockholders' meeting had adjourned, and also because they showed that the proposition was declined by the plaintiff, who submitted a counter-proposition of his own. After the petition was amended, the defendant, still insisting upon its demurrers to the original petition, demurred to the petition as amended, one of the grounds of demurrer being, that the allegations in reference to the services of the plaintiff in connection with the financial affairs of the corporation, in procuring for it and extending to it financial assistance, indorsing and guaranteeing its paper, etc., were insufficient to authorize a recovery, as the action was not brought to recover for such alleged services, and no recovery could be had for them "under color of a salary as president of the corporation;" and under the allegations of the petition, there could be no recovery for them under a quantum meruit, the value of such services not being even alleged. There were other grounds of demurrer, directed to particular allegations in the petition as amended. The court overruled the demurrers, both general and special, and the defendant excepted.

*Hatcher & Carson,* for plaintiff in error.

*Charlton E. Battle,* contra.

FISH, C. J. (After stating the foregoing facts.)

1. The special demurrer to the allegation, that at the time of the organization and the first election of the officers of the corporation, it was tacitly understood that fair, reasonable, and adequate salaries should thereafter be paid to the officers, should have been sustained. It is obvious that this was the statement of a mere conclusion of the pleader, and not a statement of facts or circumstances which a court or jury could grasp and consider, in order to determine whether or not there was an express or an implied contract to pay the plaintiff a salary as president of the corporation. If nothing was said upon the question of salaries or compensation of officers, the plaintiff might have tacitly understood one thing, and the other two stockholders and directors might have tacitly understood another. In order for a judicial tribunal to determine whether there was or was not a given understanding between parties, it is necessary for it to be informed as to what passed between the parties at

the time of the alleged understanding. What was said and what was done should be alleged by the pleader, and not his mere conclusion as to what was in the minds of the parties at the time, unuttered and undisclosed to each other. For these reasons, independently of the question whether the corporation could be bound by any mere private understanding between its shareholders and directors as to what it would do in the future, the special demurrer in question should have been sustained.

2. The court should have then sustained the general demurrer and dismissed the petition, as it failed to state a cause of action against the defendant corporation. Whatever cause the plaintiff may have had for feeling aggrieved by the conduct of the other two stockholders and directors in voting to themselves salaries as officers of the corporation and refusing to provide a salary for him as its president, his petition clearly showed that he could not, under its allegations, recover of the corporation, under either an express or an implied contract. The petition expressly negatived the idea that any corporate action had been taken providing for the payment of a salary, or any compensation whatever, to the president for his services. Hence the plaintiff had to rely upon an implied contract, and sought to recover for his services as president upon a quantum meruit. It is well settled in all jurisdictions that the directors of a private corporation are not entitled to salary or other compensation for performing the usual and ordinary duties pertaining to their office, as defined by the charter or by-laws, or by custom, unless there is an express agreement or provision for compensation when the services are performed. "They can not recover on implied contract for what the services were reasonably worth, for the law will not imply a promise on the part of the corporation to pay; and it can make no difference, in the application of this rule, that the services were performed with the expectation of compensation, or with the general understanding among the directors themselves that they should receive compensation. The courts have based this doctrine on the ground that the directors, president, and other managing officers of a corporation are in effect trustees, and the law does not imply any promise to pay trustees for performing their duties as such, or allow them to take compensation out of the funds in their hands, in the absence of an express provision or agreement for compensation." 3 Clark &

Marshall on Priv. Corp. § 671a, and numerous cases there cited. By the weight of authority, this rule applies to directors serving as president, vice-president, treasurer, etc. Ib.; 21 Am. & Eng. Enc. L. 905-906, and cit. The rule is succinctly stated by Judge Thompson in his work on Corporations, in the following language: "In the absence of some provision in the articles of incorporation, in the by-laws, or in some resolution of the board of directors legally passed, the general rule is that the president and other officers of private corporations are presumed to serve without compensation, and can not maintain an action against the corporation to recover compensation for their official services." 7 Thomp. Corp. § 8581. In Ellis *v.* Ward, 137 Ill. 509, the court not only announced this rule, but went further and held that a private corporation can not legally pay its officers for past services rendered in the performance of their usual duties, unless prior to the rendition of such services a by-law or resolution has been adopted authorizing and fixing compensation therefor; and that, "Where a president of an incorporated company performs services as such, without any by-law or resolution providing compensation for his services, and afterwards accepts a salary voted to him for past services, he will be liable to refund the same in favor of creditors of the company." In the opinion it was said that this doctrine was well settled by that court, and a number of its decisions were cited. The general rule which we have been discussing is not applicable where a director, or managing officer, of a private corporation renders extra services, which are clearly outside of the usual and ordinary duties of his office; but he may recover the reasonable value of such services as upon a quantum meruit, where they were performed under such circumstances as to raise an implied promise on the part of the corporation to pay for them; especially if it was understood by the other officers of the corporation that he was to perform these services and to be paid for them by the corporation. 3 Clark & Marshall on Priv. Corp. § 671c. The plaintiff was not obliged to serve the corporation as its president after the majority of its directors had declined to adopt a by-law or pass a resolution providing a salary for the incumbent of that office, and he was not entitled to compensation for services which he had then already rendered the corporation as its president.

Even if the allegations of the petition, as amended, in reference

to the assistance which the plaintiff rendered the corporation in the successful conduct and management of its financial affairs, by the use of his personal influence with financial institutions in its behalf and the pledging of his own credit for its benefit, etc., can be considered as presenting a case of services rendered the cor-. poration, outside of his regular official duties, of such a character and under such circumstances as to raise an implied promise on the part of the corporation to compensate him for them, he did not. sue for the value of these services. His suit was for "a fair, reasonable, and adequate sum of money in payment of salary as president of the defendant company from the 19th day of June, 1900, to the 14th day of July, 1904." And he alleged "that such part of the salary as accrued between June 19th, 1900, and May 8th, 1902, became due and payable on the said last-named day, being the time at which the salaries of the other officers of said company were fixed, and such parts of such salary as accrued after May 8th, 1902, became due annually on June 19th of each year, except for the unexpired term extending from June 19th, 1904, to July 14th, 1904, which became due and payable on the last-mentioned day." He prayed "judgment against the defendant for such fair, reasonable, and adequate sum of money in payment for his services and salary as president for the time aforesaid, to wit, from June 19th, 1900, to July 14th, 1904, together with interest on said sum from the date the same became due and payable as above set forth." He also alleged that "the sum of $3,600.00 per annum is a fair and reasonable sum as a salary for the president of the Home Mixture Guano Company during the time aforesaid, which amounts to the sum of $14,650.00, for the payment of which he has made a demand on the said Home Mixture Guano Company, and the same has been refused." This was the character of his suit. It was clearly and simply a suit for salary or compensation for the plaintiff's services as president of the defendant corporation, and not in anywise a suit for compensation for services rendered by him to the corporation outside of his office and duties as its president. There was in the petition neither an allegation as to the value of any extra services rendered to the corporation by the plaintiff, nor any prayer for compensation for such services. So, all the allegations in reference to what he did in behalf of the corporation, in securing for it financial assistance and in rendering such assistance

to it, etc., can only be construed as intended to show the nature and character of the services which he rendered it as its president, and to strengthen his claim for adequate compensation for such services.

3. Counsel for defendant in error contends that even if the court should hold that the petition did not set forth a cause of action for compensation for the plaintiff's services as president of the corporation prior to the passage of the by-law or resolution fixing the salary of the president at the sum of $3,600 per annum, still the petition would show a right in the plaintiff to recover for the time which he served as president after this action was taken by the majority of the board of directors, it being alleged therein "that he remained as president for about two weeks or more after the salary for president had been thus fixed." The contention that the plaintiff would, under the allegations of his petition, be entitled to recover, upon an express contract, compensation for the brief interval of time during which he served as president after a salary for that officer had been provided for by the directors, is not sound, as the plaintiff, as we have seen, sued, and sued only, upon an implied contract. Nowhere in his petition did he allege that he was entitled to recover anything under the by-law or resolution providing a salary for the president, and nowhere did he pray for such a recovery. He did seek to recover compensation for the whole time that he was president at the rate of $3,600 per annum, but he sought to recover this, not under any resolution or by-law adopted by the directors, but upon a quantum meruit, alleging "that the sum of $3,600.00 per annum is a fair and reasonable sum as a salary for the president of the Home Mixture Guano Company during the time aforesaid," that is, during the whole time that he was president. He never planted his case, either in whole or in the slightest part, upon an express contract on the part of the corporation to pay him, but, always and everywhere, upon an implied contract to pay him "a fair, reasonable, and adequate sum of money" for his services as its president. The allegations, that, "After the sale of your petitioner's stock had been agreed upon and the same was to be purchased by the said H. Bussey and Arthur Bussey, with their associates, a meeting of the stockholders and directors . . was held, at which certain resolutions and by-laws were adopted, and wherein it was provided that the president of the defendant company should thereafter be paid the sum of

$3,600.00 annually, payable monthly," etc., were apparently made for the sole purpose of showing how unfairly the plaintiff had been treated by his fellow-stockholders and directors, in that they had refused to provide any salary for the president while he was holding, and was expected to continue to hold, that office, but "as soon as it was determined that petitioner was no longer to occupy the position of president, . . a salary for that office was at once fixed for the amount named, . . and the said H. Bussey was to be the recipient and beneficiary thereof." The manner and connection in which these allegations were made clearly indicate that their sole purpose was to strengthen the plaintiff's claim for "a fair, reasonable, and adequate sum of money in payment of salary as president of the defendant company," upon an implied contract, by showing what was done with reference to a salary for the president as soon as it was ascertained that the plaintiff was to vacate that office. As if to emphasize and make clear the purpose for which these allegations were introduced by the amendment to the petition, the allegation that the plaintiff "remained as president for about two weeks, or more, after the salary for the president had been thus fixed," is immediately followed by the statement, "but it was known and determined that petitioner was not to occupy said position, and that this petitioner would not be the beneficiary of the sum so named." This last-quoted statement is in effect an allegation that the provision for a salary for the president was not to become operative until a new president was elected. There is not the slightest indication that the plaintiff sought to recover anything under the resolution or by-law providing a salary for the president of the company. For these reasons, we do not think that the allegations in reference to the action of the directors in fixing a salary for the president can be construed into a separate count in the petition, upon an express contract to pay the plaintiff for his services as president "for about two weeks, or more," after this action was taken.

It follows, as we have said, that the general demurrer should have been sustained and the petition dismissed, upon the ground that it set forth no cause of action against the defendant corporation.

*Judgment reversed. All the Justices concur.*