PACIFIC IMPROVEMENT CO. v. CHATTANOOGA SOUTHERN R. CO.
(LAMB, Intervener).

(Circuit Court, N. D. Georgia.   March 31, 1911.)

1. CORPORATIONS (§ 308*)—OFFICERS—COMPENSATION.
   The president of a corporation may not claim a salary for his services as such, where none was voted him before the rendition of the services; but, where he renders extra services clearly outside the ordinary duties of his office, he may recover the reasonable value of such extra services under an implied promise to pay for them.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334-1349; Dec. Dig. § 308.*]

2. CORPORATIONS (§ 308*)—OFFICERS—COMPENSATION.
   The president of a corporation in the hands of a receiver filed an intervening petition for services as president, and alleged that he had rendered valuable services to the corporation as president, and that he had never received any compensation therefor, and that the corporation was justly indebted to him in a specified sum.. An amended petition alleged that, at the request of high officials of the corporation, he devoted a great part of his time to the affairs of the corporation and rendered services; that he was nominally recognized by the board of directors as the president; but that his duties were such as might arise out of the needs of the corporation; and that he gave himself to the management of the business of the corporation and rendered, constantly, various services. *Held*, that the amended petition, taken, as it must be, in connection with the original petition, did not state facts justifying a recovery for services out of the assets of the corporation.
   [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 308.*]

Suit by the Pacific Improvement Company against the Chattanooga Southern Railroad Company, in which Henry L. Lamb filed an intervening petition for an allowance against defendant for compensation for services rendered as its president.   Demurrer to intervention, as amended, sustained.

Norris Headrick, for intervener.
Coleman & Frierson, for demurrant Chattanooga Southern R. Co.
Watkins, Thompson & Watkins, for demurrant Margaret Olivia Sage.

NEWMAN, District Judge.   Henry L. Lamb filed his intervening petition in this case, asking to be allowed to recover against the company compensation for services rendered as its president.   The original petition is as follows:

"In compliance with the decree rendered in the above-styled cause, Henry L. Lamb, by his attorney, Norris Headrick, respectfully shows to the court that he is, and continuously has been since the year 1893, president of the defendant railroad company, and, as such president, he has rendered and continues to render valuable services to said company; that he has never at any time received any sum by way of compensation for said services; and that therefore the said defendant, Chattanooga Railroad Company, is justly indebted to your petitioner in the sum of fifteen thousand dollars ($15,000.00) as evidenced by statement filed herewith, executed and sworn to by your petitioner, marked as Exhibit No. 1 to this petition.   Your petitioner prays that his said account be allowed, and that said indebtedness be paid in full out of the proceeds realized in the within cause."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The account attached to said petition is as follows:

"The Chattanooga Southern Railroad Company, **Dr.**
"To Henry L. Lamb,
"For services as president of the company, $15,000.
"State of Tennessee, Hamilton County—ss.:
"Personally appeared before me, Norris Headrick, a notary public in and for the county and state aforesaid, Henry L. Lamb, with whom I am personally acquainted, who being sworn on his oath says: That his foregoing account in the sum of fifteen thousand dollars, ($15,000.00) against the Chattanooga Southern Railroad Company, a corporation, is just, true and correct, and that said sum remains due and unpaid.
"[Signed] Henry L. Lamb.
"Sworn to and subscribed before me, this the 15th day of April, 1910.
"[Signed] Norris Headrick,
"Notary Public, Hamilton Co., Tenn."

This claim was referred to G. E. Maddox, Esq., standing master in chancery, and his report thereon is as follows:

"Henry L. Lamb filed his claim for the sum of $15,000 for services as president of the defendant company, from the year 1903; his claim being set forth in detail. To this petition demurrers were filed by the railroad company, and E. C. Osborne, receiver therefor; also by Mrs. Margaret Olivia Sage, one of the creditors of the defendant company. After hearing the argument of counsel, I am of the opinion that the demurrers should be sustained. I therefore sustain the demurrers and dismiss the claim."

This case coming before the court on exceptions to the master's action, the intervener was allowed to amend his petition, which he did as follows:

"Leave to amend the original intervening petition filed in this cause by this intervener having been granted, he now comes and amends his original petition and says:

"That your petitioner, Henry L. Lamb, was requested by certain high officials of the Chattanooga Southern Railroad Company to overlook the affairs of that company. This request was made in 1893, and immediately thereafter your petitioner acceded to it and began to devote a great part of his time to the affairs of the company. Your petitioner was in the employ of the said company from the time before mentioned until the filing of the bill in this cause and the appointment of the receiver, rendering during that time a great deal of attention to the affairs of the company. He was nominally recognized by the board of directors of the company as its president, but his duties were any such as might arise out of the needs of the company. He gave himself to the managing and running of the railroad belonging to the company, and in doing that was constantly called upon for various services. The railroad owned by the company was not of any magnitude, being less than 100 miles long, and consequently your petitioner was called on to look after a variety of things. Your petitioner was kept busy in the service of the company for years, and during that time made no application for compensation for what services he had rendered and was rendering because he realized that such would be futile, the affairs of the company being so involved that financial recompense at the time was practically impossible, and your petitioner thought it best to not further embarrass the company by any application for compensation when it was due, but to wait until the affairs of the company were in better shape. Thus waiting, the bill herein was filed before your petitioner had made any application.

"Your petitioner served the company, along the lines herein set out, until 1907, and has never received any compensation for such services. He therefore asks, as in his original petition filed herein, that the sum of $15,000 be allowed him."

Two questions are made as to this intervening petition. The first is that the president of a railroad company cannot recover compensation from the corporation that becomes insolvent in the hands of receivers, under the circumstances indicated in this original and amended intervention. The next is the statute of limitations.

If the first point made against this intervener as to his right to recover is good, it is unnecessary to consider the second.

[1] There is no pretense here that any salary was voted to Henry L. Lamb, as president, by the board of directors before the services were rendered. The claim simply stands on what is stated in his petition, that he rendered valuable services, as president, to the company, and that he is consequently entitled to recover for the same.

In Cook on Corporations, vol. 2, § 657, p. 1924, it is said:

"The president (that is, the president of a corporation) cannot claim a salary for his services as president where none was voted to him before the services were rendered"—citing quite a number of authorities, among them St. Louis, etc., R. R. v. O'Hara, 177 Ill. 525, 52 N. E. 734, 53 N. E. 118; Henry, etc., Co. v. Schaefer, 173 Mass. 443, 53 N. E. 881, 73 Am. St. Rep. 305; Metropolitan Elev. Ry. v. Kneeland, 120 N. Y. 134, 24 N. E. 381, 8 L. R. A. 253, 17 Am. St. Rep. 619; Merrick v. Peru Coal Co., 61 Ill. 472; Holland v. Lewiston Falls Bank, 52 Me. 564; Barril v. Calendar, etc., Co., 50 Hun (N. Y.) 257, 2 N. Y. Supp. 758; Commonwealth Ins. Co. v. Crane, 47 Mass. 64; Kilpatrick v. Penrose, etc., Co., 49 Pa. 118, 88 Am. Dec. 497.

In Home Mixture Guano Co. v. Tillman, 125 Ga. 172, 53 S. E. 1019, what was determined by the Supreme Court of the state will be shown by an extract from the opinion of Chief Justice Fish:

"The court should have then sustained the general demurrer and dismissed the petition, as it failed to state a cause of action against the defendant corporation. Whatever cause the plaintiff may have had for feeling aggrieved by the conduct of the other two stockholders and directors in voting to themselves salaries as officers of the corporation and refusing to provide a salary for him as its president, his petition clearly shows that he could not, under its allegations, recover of the corporation, under either an express or an implied contract. The petition expressly negatived the idea that any corporate action had been taken providing for the payment of a salary, or any compensation whatever, to the president for his services. Hence the plaintiff had to rely upon an implied contract, and sought to recover for his services as president upon a quantum meruit. It is well settled in all jurisdictions that the directors of a private corporation are not entitled to salary or other compensation for performing the usual and ordinary duties pertaining to their office, as defined by the charter or by-laws, or by custom, unless there is an express agreement or provision for compensation when the services are performed. They cannot recover on implied contract for what the services were reasonably worth, for the law will not imply a promise on the part of the corporation to pay; and it can make no difference, in the application of this rule, that the services were performed with the expectation of compensation, or with the general understanding among the directors themselves that they should receive compensation. The courts have based this doctrine on the ground that the directors, president, and other managing officers of a corporation are in effect trustees, and the law does not imply any promise to pay trustees for performing their duties as such, or allow them to take compensation out of the funds in their hands, in the absence of an express provision or agreement for compensation.' 3 Clark & Marshall on Priv. Corp. 671a, and numerous cases there cited. By the weight of authority this rule applies to directors serving as president, vice president, treasurer, etc. Id.; 21 Am. & Eng. Enc. L. 905, 906, and citations. The rule is succinctly stated by Judge

Thompson in his work on Corporations, in the following language: 'In the absence of some provision in the articles of incorporation, in the by-laws, or in some resolution of the board of directors legally passed, the general rule is that the president and other officers of private corporations are presumed to serve without compensation, and cannot maintain an action against the corporation to recover compensation for their official services.' 7 Thomp. Corp. 8581. In Ellis v. Ward, 137 Ill. 509 [25 N. E. 530], the court not only announced this rule, but went further and held that a private corporation cannot legally pay its officers for past services rendered in the performance of their usual duties, unless prior to the rendition of such services a by-law or resolution has been adopted authorizing and fixing compensation therefor; and that, 'where a president of an incorporated company performs services as such, without any by-law or resolution providing compensation for his services, and afterwards accepts a salary voted to him for past services, he will be liable to refund the same in favor of creditors of the company.' In the opinion it was said that this doctrine was well settled by that court, and a number of its decisions were cited. The general rule which we have been discussing is not applicable where a director, or managing officer, of a private corporation renders extra services, which are clearly outside of the usual and ordinary duties of his office, but he may recover the reasonable value of such services as upon a quantum meruit, where they were performed under such circumstances as to raise an implied promise on the part of the corporation to pay for them; especially if it was understood by the other officers of the corporation that he was to perform these services and to be paid for them by the corporation. 3 Clark & Marshall on Priv. Corp. 671c. The plaintiff was not obliged to serve the corporation as its president after the majority of its directors had declined to adopt a by-law or pass a resolution providing a salary for the incumbent of that office, and he was not entitled to compensation for services which he had then already rendered the corporation as its president."

[2] It is clear that the amendment to the intervention must be taken in connection with what is stated in the original intervention. In that, as will be seen, the intervener sues "for services as president of the company." What is stated in the amendment is perhaps somewhat an enlargement of what is contained in the original intervention, but is not sufficient to bring the case within any of the exceptions to the general rule on the subject of the right of the president of a company to recover under such circumstances as are here shown.

In Home Mixture Guano Co. v. Tillman, supra, it is said:

"Even if the allegations of the petition, as amended, in reference to the assistance which the plaintiff rendered the corporation in the successful conduct and management of its financial affairs, by the use of his personal influence with financial institutions in its behalf and the pledging of his own credit for its benefit, etc., can be considered as presenting a case of services rendered the corporation, outside of his regular official duties, of such a character and under such circumstances as to raise an implied promise on the part of the corporation to compensate him for them, he did not sue for the value of such services. His suit was for 'a fair, reasonable, and adequate sum of money in payment of salary as president of the defendant company from the 19th day of June, 1900, to the 14th day of July, 1904.'"

There is no view of this intervention, considering the original and amendment together, which would authorize the intervener to recover anything out of the assets of this insolvent corporation.

It would have been better practice for the demurrer to the intervention to have been heard originally by the court; but it seems to have gone to the master under an order of reference, and I do not

see what else he could have done than sustain the demurrer. At all events, it is perfectly evident to the court now that the demurrer to the intervention as amended should be sustained, and an order may be entered to that effect.