NOTLEY v. FIRST STATE BANK OF VICKSBURG.

1. CORPORATIONS—OFFICERS—SERVICES—COMPENSATION.
   No presumption of an agreement by a corporation to pay its president for official services arises from the mere rendition of the services.

2. BANKS AND BANKING—OFFICERS—SERVICES—COMPENSATION.
   In an action against a bank by its former president to recover for services rendered to the bank during his presidency, evidence examined, and *held*, that no services, not within his duties as president, were shown to have been performed under circumstances raising a presumption that the parties understood they were to be paid for.

3. CORPORATIONS—OFFICERS—SERVICES—COMPENSATION—IMPLIED CONTRACT.
   A bank or other corporation may be bound by an implied contract in the same manner as an individual may, but to render a corporation liable as a debtor under an implied promise to pay for services rendered by one of its directors, it must be shown, not only that the services were valuable, but also that they were rendered under such circumstances as to raise the fair presumption that the parties intended and understood that they were to be paid for; or, at least, that the circumstances were such that a reasonable man in the same situation with the person who received and is benefited by them would and ought to understand that compensation was to be paid for them.

4. Work and Labor — Services — Compensation — Implied Con-
   tract.
   The mere fact that valuable services are rendered for the bene-
   fit of a party does not make him liable upon an implied con-
   tract to pay for them.

Error to Kalamazoo; Adams, J. Submitted October
13, 1908. (Docket No. 50.) Decided November 30, 1908.

Assumpsit by William F. Notley against the First State
Bank of Vicksburg for services rendered. There was
judgment for plaintiff, and defendant brings error. Re-
versed.

*Jesse R. Cropsey* and *Dallas Boudeman*, for appel-
lant.

*Hollander & Notley* (*A. J. Mills*, of counsel), for ap-
pellee.

Vicksburg is a small village, situated in the county of
Kalamazoo, several miles from any place where there are
banks. The only bank in the village prior to 1905 had
failed and gone into bankruptcy. Plaintiff and other cit-
izens of the village and vicinity, and persons from Kala-
mazoo and Grand Rapids, on July 28, 1905, organized the
defendant bank known as the "First State Bank of Vicks-
burg," with a capital of $25,000. Plaintiff was its first
president. His chief business in the community was the
buying and selling of stock, wool, horses, etc. He was
well acquainted with the inhabitants of the village and
surrounding country, having lived there a long time. He
was not a banker, had never had any experience in that
business, and was undoubtedly chosen president because
of his wide acquaintance in the vicinity. He served as its
president until February 21, 1906, when he was removed.
He thereupon brought this suit for services. His bill of
particulars was—

"For services rendered from July 28, 1905, to Febru-
ary 23, 1906, as president and general manager of said

bank, $1,000. For services rendered in endeavoring to induce divers citizens of Vicksburg and vicinity to become interested in the incorporation of the First State Bank of Vicksburg, in seeing, talking with sundry citizens, and explaining the plan of the organization proposed, the advantages to accrue therefrom, how the business was expected to be conducted, and the organization of said corporation, and for services rendered in obtaining subscriptions to the capital stock of said bank, to wit, eight months between July 1, 1905, and March 1, 1906, $2,000."

At the same meeting at which plaintiff was elected president, a cashier and bookkeeper were also elected, both of whom were to receive a fixed salary. There was no mention of salary or compensation for plaintiff in any resolution or action taken by the board of directors or by the action of the stockholders at any meeting. Plaintiff gave evidence tending to show that he spent most of his time at the bank; that he was consulted by the cashier and the discount committee in making loans; that he met and extended "the glad hand" to people who came to the bank. He took no part in the business of the bank in the way of paying out or receiving moneys, and had nothing to do with keeping the books. He did not receive deposits except occasionally. Meanwhile he attended to his own business, buying and selling stock, and people came to the bank to see him upon his own private business, which he carried on as before. When he made purchases, he gave his personal checks upon the bank when he had no deposit to meet them, and caused them to be carried as cash items until he obtained money sufficient to make his account good. The checks were then paid and charged to him. When he sold stock, he took notes of purchasers, sometimes running for six months, and caused them to be discounted at the bank. He borrowed upon two mortgages, given by himself and wife, $5,000 without consulting the discount committee. It is proper to say that this loan was afterwards ratified by the directors. In no action taken by the board and in no conversation with any officers of the bank was the term "man-

ager" or "general manager" used, and there is no testimony to indicate any intention or understanding on the part of the directors that plaintiff was to act as manager or to perform any other duties than those incident to his position as president. Testimony of plaintiff's three sisters was erroneously admitted to prove that plaintiff made a statement to them, though they were not stockholders, that he expected a salary of $500. The total profits of the bank during plaintiff's incumbency of office was $1,120.42. The case was submitted to the jury, who found a verdict for the plaintiff of $273.83.

GRANT, C. J. (*after stating the facts*). The circuit judge eliminated from the case the second item in the bill of particulars, holding that plaintiff was entitled to no compensation for what he did in promoting the defendant's organization. He also eliminated all claim for services as president, but submitted to them the question whether there was an implied contract that plaintiff should perform services outside his duties as president and an implied contract to pay for them. Stated substantially in the language of the circuit judge in his instructions, he left it to the jury to determine whether valuable services were rendered by the plaintiff to the defendant "under such circumstances as would raise a fair presumption that the directors of this bank and the plaintiff, each and both, intended that such services should and would be paid for." No presumption of an agreement arises from the services which plaintiff claims to have rendered. *Martindale* v. *Wilson-Cass Co.*, 134 Pa. 348. All the evidence adduced upon the trial is in the record. After a careful perusal of it, I fail to find any evidence that the directors of the defendant, either as a board or individually, had any knowledge of the time that plaintiff spent in the bank during banking hours, or that he was performing any services outside those imposed upon him as president, or that they expected him to spend his time there. The circuit judge instructed the jury that

there was no express contract established in writing or by conversation. In other words, that there was no talk between plaintiff and the defendant's officers from which the jury could find an agreement. If the directors had investigated it and had been informed of the actual situation, they would have ascertained that plaintiff, without any direction from them, was carrying on his own private business at the bank, attending to it substantially the same as before, and using the bank to obtain money to carry it on; that the bank books showed no services or claims for services; that plaintiff was using the bank for his own private purposes in a very questionable, if not an illegal, manner. Can an inference of an agreement be presumed under these circumstances? If plaintiff did perform any duties outside those of president, it was in securing a few persons to borrow money from the bank, in advising upon some applications for loans, and in securing a few deposits. Can the presumption of an agreement arise from these acts? What is there to indicate either that plaintiff expected to receive, or the defendant to give, compensation? The cashier and bookkeeper were meanwhile attending to all the business of the bank, and much that plaintiff claims he did was not necessary for him to do. The same resolution that appointed plaintiff without a salary appointed the cashier and bookkeeper with salaries, thereby showing the clear intent of the parties that the president should serve without compensation. The acts which plaintiff performed, if not strictly within his duties as president, were closely akin to them, and the law does not permit an agreement to be implied under such circumstances, especially where such official makes no claim until the expiration of his term, or until he has been removed from office.

The supreme court of Massachusetts, in *Pew* v. *Gloucester Nat. Bank*, 130 Mass. 391, have clearly stated the rule which is quoted with approval by the Supreme Court of the United States in *Fitzgerald Construction Co.* v. *Fitzgerald*, 137 U. S. 98. It is as follows:

"A bank or other corporation may be bound by an implied contract in the same manner as an individual may. But, in any case, the mere fact that valuable services are rendered for the benefit of a party does not make him liable upon an implied promise to pay for them. It often happens that persons render services for others which all parties understand to be gratuitous. Thus, directors of banks and of many other corporations usually receive no compensation. In such cases, however valuable the services may be, the law does not raise an implied contract to pay by the party who receives the benefit of them. To render such party liable as a debtor under an implied promise, it must be shown, not only that the services were valuable, but also that they were rendered under such circumstances as to raise the fair presumption that the parties intended and understood that they were to be paid for; or, at least, that the circumstances were such that a reasonable man in the same situation with the person who received and is benefited by them would and ought to understand that compensation was to be paid for them."

The facts of that case are applicable to those in this. The rule there stated is established by other courts. *Citizens' Nat. Bank* v. *Elliott*, 55 Iowa, 104; *Holder* v. *Railway Co.*, 71 Ill. 106; *Lafayette, etc., R. Co.* v. *Cheeney*, 87 Ill. 446; *Lowe* v. *Ring*, 123 Wis. 370; *Henry Wood's Sons* v. *Schaefer*, 173 Mass. 443; *Eakins* v. *White Bronze Co.*, 75 Mich. 568; *St. Jude's Church of Fentonville* v. *Van Denberg*, 31 Mich. 287; *Whittemore* v. *Kent Scientific Institute*, 128 Mich. 518; 2 Cook on Corporations (5th Ed.), § 657. The court should, as requested at the close of the plaintiff's case, have directed a verdict for the defendant. The like request should have been granted after the defense rested.

This disposal of the case renders it unnecessary to determine the many exceptions to the ruling of the court in the admission and rejection of testimony.

Judgment reversed, and new trial granted.

BLAIR, HOOKER, MOORE, and MCALVAY, JJ., concurred.