In re PENNSYLVANIA CONSOL. COAL CO.

(District Court, E. D. Pennsylvania. July 27, 1908.)

No. 3,041.

1. BANKRUPTCY—CORPORATIONS—PRINCIPAL PLACE OF BUSINESS.
   The question where a corporation had its principal place of business for the purpose of determining the jurisdiction of proceedings in bankruptcy against it is one of fact, and neither its place of incorporation nor its charter is controlling.

2. SAME—POWERS AND DUTIES OF TRUSTEE.
   A trustee in bankruptcy duly elected may properly appear and answer a petition for dismissal of the proceedings for want of jurisdiction.

3. SAME—PRINCIPAL PLACE OF BUSINESS—PROCEEDINGS IN TWO DISTRICTS.
   A coal company was incorporated in West Virginia, and its principal place of business, as stated in its charter, was in that state, as were also its coal mines and lands which constituted all of its real estate. From the time of its incorporation, however, its executive office was maintained in Philadelphia, and there all of its financial matters were transacted, its

books kept, and its banking business done. Its letter heads gave that as its location, and it made all of its collections and a large part of its sales from there; but it had not complied with the laws of the state to entitle it to do business therein. For a time it also maintained offices at its mines; but for about a year before the filing of a petition in bankruptcy against it the mines had not been operated, and its only office was in Philadelphia, where it transacted some business relating to financial matters. A petition in bankruptcy was filed against it in the Eastern district of Pennsylvania, on which an adjudication was made, and later a proceeding was instituted in West Virginia, on which a receiver was appointed, but no adjudication made. Some of its creditors resided in one state, and some in the other. *Held* that, during the six months prior to the proceedings, its principal place of business was in the Eastern district of Pennsylvania, and that the court in such district had jurisdiction, and, having first exercised it, should retain the proceedings to the *exclusion* of the West Virginia court, in the absence of proof that it would be to the greater convenience of the parties in interest that the proceedings should be transferred.

In Bankruptcy. On exceptions to report of special referee on petition to vacate adjudication.

The following is the opinion of Referee Theodore M. Etting:

By order of court made April 3, 1908, there was referred to me, as special referee, with instructions to ascertain and report the facts, together with the testimony and findings of fact and law, a petition filed by Samuel W. Shrader, Abraham W. Burdett, and William F. Harvey on the 6th day of March, 1908, asking, inter alia, that an adjudication of bankruptcy made by this honorable court against the above-named Pennsylvania Consolidated Coal Company be vacated and set aside, and that John W. Miller, who had been appointed receiver of said company upon a petition filed in the Northern district of West Virginia, be appointed ancillary receiver of the assets of the said company in this district.

By order of the court, subsequently made, there was also referred to me, as special referee, answers to the above petition, filed by Joseph W. Gross, trustee, by Messrs. Watson, Diehl & Watson, creditors, and by the Pennsylvania Consolidated Coal Company. The last-named pleading, though termed an answer, is, in effect, in the nature of an exception to the petition filed by Shrader.

Before submitting any conclusions of fact or law, some reference should be made to the antecedent history of the case. The Pennsylvania Consolidated Coal Company is a corporation which was incorporated under the laws of West Virginia, by charter issued by the Secretary of State of said commonwealth on the 4th day of February, 1904. The objects and purposes of the corporation, as stated in its charter, are purchasing, acquiring, holding, and owning timber land, coal, iron ore, fire clay, and other mineral lands, in fee simple, when otherwise not prohibited by law, managing, working, and operating the same, mining and shipping coal, manufacturing coke, conducting general merchandise stores, and doing and performing all such other things, not prohibited by law, which may be essential and necessary, or incident, to any of the above named and described objects. The principal place of business of the corporation, as stated in its charter, is located in the city of Grafton, county of Taylor, in the state of West Virginia.

Under the laws of West Virginia, domestic corporations are divided into two classes, resident and nonresident. A resident corporation is one having both its principal place of business and its chief works in West Virginia. A nonresident corporation is one which has either its principal place of business or its chief works, or both, outside of the state of West Virginia.

The Pennsylvania Consolidated Coal Company had no real property in any state other than West Virginia. Its real property in West Virginia consisted of two coal mines, and it maintained thereat certain offices in connection with the operation of said mines. From the time of the formation of the company, and continuously thereafter, for certain purposes hereinafter referred to, the company also maintained an office in the city of Philadelphia.

In consequence of the ill success of the venture, the mines of the company had not been operated for more than a year preceding the bankruptcy, and the offices located in the vicinity of said mines had been discontinued; the Philadelphia office alone being maintained. On February 20, 1908, certain creditors of the company filed in the District Court of the United States for the Eastern District of Pennsylvania a petition praying that the company be adjudged a bankrupt. In that petition it was averred that the principal place of business of the company for the six months preceding was in Philadelphia. Upon this petition, the subpœna issued, service of which was accepted by the secretary of the coal company, and on the 6th day of March, 1908, an adjudication of bankruptcy was entered, and an order of reference made to me, as one of the referees in bankruptcy of this district. It further appears that on the 6th day of March, 1908, an application was made to the judge of the District Court of the United States for the Northern District of West Virginia by Samuel W. Shrader, Abraham W. Burdett, and William F. Harvey, praying for the appointment of a receiver and an adjudication in bankruptcy against said coal company. On the 9th day of March, 1908, pursuant to the prayer of the petition above referred to, the judge of the District Court of the United States for the Northern District of West Virginia appointed John W. Miller receiver. No order has as yet been entered by that court, adjudicating the said coal company bankrupt, and I assume, from correspondence which has been shown me by counsel for Shrader, that this course has been pursued in consequence of the prior adjudication of this court and the proceedings now pending. On March 13, 1908, the bankrupt filed with me, as the referee to whom the cause above mentioned had been referred, the schedules required by law, and, after due notice to all creditors whose names appeared thereon, a first meeting of creditors was called, and said meeting was held at my office, No. 701 Arcade Building, in the city of Philadelphia, on the 3d day of April, 1908. At this meeting eight creditors filed claims, which were allowed. The claims thus allowed amounted, in the aggregate, to $11,254.86. At said meeting an election was held, at which Joseph W. Gross was duly elected trustee, and was required to enter bond in the sum of $5,000. The trust has been accepted by Mr. Gross, bond in the above amount has been filed and approved, and Mr. Gross has, from the time of his election and qualification as aforesaid, been acting, and is still acting, as trustee. On the 13th day of April, 1908, after due notice to all the parties in interest, a meeting was called and held at my office, No. 701 Arcade Building, city of Philadelphia, for the purpose of considering, as special referee, the petition filed by Samuel W. Shrader et al. and the other pleadings hereinbefore referred to. At said meeting, and at sundry adjourned meetings held from time to time thereafter, I was attended by Joseph W. Gross, Esq., trustee, Abraham W. Burdett, Esq., and G. H. A. Kunst, Esq., attorneys for Samuel W. Shrader et al., J. Aubrey Anderson, Esq., attorney for the bankrupt, Albert W. Watson, Esq., of counsel for the trustee, Thomas M. Righter and Charles H. Jacobs, president and secretary, respectively, of the bankrupt company, and also by John W. Miller, the receiver appointed by the District Court of the United States for the Northern District of West Virginia. Testimony of the officers of the company and of Mr. Miller and Mr. Burdett was taken stenographically and was afterwards typewritten; their signatures thereto being waived by agreement of counsel. This testimony is returned herewith. There is annexed to the testimony all of the documentary evidence presented at the said meeting, and there is included therein a copy of the docket entries of the District Court of the United States for the Northern District of West Virginia, certified to by the clerk of said court.

In addition to the facts hereinbefore referred to in stating the antecedent history of the case, I find the facts to be as follows:

The real property of the company, which consists of two coal mines and certain land adjacent thereto, with certain houses erected thereon, is situate in Upshur county, W. Va. Work at both mines was discontinued for upward of a year prior to the filing of the petition in bankruptcy, and one mine is at present full of water.

Under the order of the District Court of the United States for the Northern District of West Virginia, Mr. Miller, the receiver of the said coal company,

is now in possession. He has sold some mules; my understanding being they were sold as perishable.

One of the mines owned by the company was conveyed to it by the Irondale Valley Coal Company, and the other by the Pleasant Valley Coal & Coke Company. Vendors' liens are retained in the deeds to secure unpaid purchase money to the amount of $115,000, $90,000 of which represents the unpaid purchase money for the property purchased from the Irondale Valley Coal Company, and $25,000 of which represents the unpaid purchase money for the property purchased from the Pleasant Valley Coal & Coke Company, and for the above amounts notes were executed by the bankrupt company. These notes are held in part by the residents of Pennsylvania, and in part by the residents of West Virginia. The owners of the said notes have not as yet proved their claims before the special referee in bankruptcy, or appeared in these proceedings, and I am unable therefore to state with certainty which of these notes, or which of certain other notes which are said to be in existence, are owned by citizens of West Virginia, and which are owned by citizens of Pennsylvania; but, so far as I am able at present to determine, the Pennsylvania creditors of this class exceed, both in number and amount, the West Virginia creditors. The same condition of affairs may be said to subsist with respect to the unsecured claims of said bankrupt company which, as stated in the schedule, amount to $11,499.79.

The laws of West Virginia prescribe the method to be adopted in the event of a corporation of this class desiring to change the location of its principal office from the place named in its charter, which, as before stated, was the city of Grafton, in the state of West Virginia. I find that the requirements of law in this respect were not observed by the bankrupt company, and I also find that from the time the company commenced operating its mines, as well as during the six months preceding bankruptcy, the executive offices and principal business office of the company were maintained in the city of Philadelphia and state of Pennsylvania.

I further find that the company failed to comply with the Pennsylvania act of April 22, 1874 (P. L. 73); no statement having been filed in the office of the Secretary of the Commonwealth, as required by that act.

The evidence with respect to the Philadelphia office is substantially as follows:

Sales were made through that office and orders were sent to the mines therefrom; payments for coal sold were received through the Philadelphia office (Righter's testimony, 35, 36); the company had no other office at any other place within the last six months (Righter's testimony, 25; Jacobs', 71); the offices in West Virginia were closed by order of the board of directors (Righter's testimony, 28, 29; Jacobs', 70, 71); the general offices are at present in Philadelphia and have been there since March, 1904 (Jacobs' testimony, 66); the books of account have always been kept in the Philadelphia office (Righter's testimony, 24; Jacobs', 70); the banking was done in Philadelphia (Righter's testimony, 25; Jacobs', 67, 68); Philadelphia was always named in the company's correspondence and on its letter heads (Righter's testimony, 24–26; Jacobs', 69). The testimony further shows that whilst during the last six months the company neither mined nor sold coal, yet, nevertheless, there was certain other business done at its Philadelphia office, as, for example, bills receivable were sent to Philadelphia and collected there (Righter's testimony, 25; Jacobs', 69); that the same is true with respect to bills payable (Righter's testimony, 85; Jacobs', 69); that notice to collect money emanated from Philadelphia (Jacobs' testimony, 72); that notes, as they fell due, were attended to at the Philadelphia office (Righter's testimony, 32–35; Jacobs', 73); that the bookkeeping was done at the Philadelphia office (Righter's testimony, 32); and that directors' meetings were held thereat (Righter's testimony, 33; Jacobs', 373).

In view of this testimony, there is no doubt in my mind as to the fact that the office maintained at Philadelphia for six months prior to the commencement of bankruptcy proceedings, was not only the principal office, but was the only office maintained by the company during this period.

It further appears from the testimony that as a result of an explosion which occurred at one of the mines owned by the bankrupt company, upwards

of a year prior to the adjudication in bankruptcy, 12 men were killed, and it is averred by the petitioners that claims for large amounts of money will doubtless be made by the representatives of said decedents, and suits therefor probably instituted, that these suits, when brought, will require the attendance of a large number of witnesses, residents of the neighborhood, and that convenience and economy will be subserved by the administration of the estate in the state of West Virginia. It appears from the testimony, however, that the coroner's jury exonerated the bankrupt company from negligence, and that no suits by reason of said explosion have as yet been brought. It may therefore be regarded as a matter open to doubt whether such suits will be brought at all.

It is averred in the said petition that suit had been actually commenced in the circuit court of Upshur county by John Shrader, the holder of certain purchase money notes hereinbefore referred to, to enforce the vendor's lien which has been referred to upon the land of the Pennsylvania Consolidated Coal Company, situate in said county. This averment I find to be true, but it further appears that at the instance of Joseph W. Gross, the trustee in bankruptcy, the judge of the District Court of the United States for the Northern District of West Virginia has issued a stay of the proceedings above referred to.

It is averred as a further fact that a deed of trust was executed by the company to Henry Coffield, trustee, to secure debts amounting, in the aggregate, to $127,000, and it is further averred that said deed of trust, and the notes issued thereunder, is fraudulent and invalid under the laws of West Virginia.

It is contended that it is necessary to the proper, expeditious, and economical administration of the estate as a bankrupt, and for the convenience of its creditors and parties in interest, that the District Court of the United States for the Northern District of West Virginia should have jurisdiction of bankruptcy proceedings. This contention is traversed in the answers filed by Watson, Diehl & Watson, and by the trustee.

### Findings of Law.

1. Certain exceptions were filed by Shrader and others to the right of Joseph W. Gross, as trustee, to file an answer to their petition. The exceptions are predicated upon the contention that the trustee is not the proper person to answer the petition, first, because his election was irregular and invalid, inasmuch as it occurred pending the determination of the question of jurisdiction and prior to the report of the special referee thereon.

This contention I regard as without merit, inasmuch as application was made by counsel for the petitioners for a stay of proceedings, and was refused by the district judge. It therefore became the manifest duty of the referee to call the creditors together without further delay, and the election of a trustee followed in accordance with the requirements of the act. Neither am I satisfied that the trustee was not authorized, after his election, to answer the petition; but, in any event, if the proper parties are the creditors themselves, and not the trustee, then, inasmuch as the answer of Watson, Diehl & Watson sets up identically the same defense as that interposed by the trustee, no special benefit could inure to the petitioners by sustaining the exception.

2. I am asked by counsel for the bankrupt company, and by Messrs. Watson, Diehl & Watson, to dismiss the petition filed by Samuel W. Shrader, Abraham W. Burdett, and William F. Harvey, on the ground that the petition is not properly verified, and also because it is denied that the petitioners, other than Burdett, are creditors.

This contention, I think, is without merit. Even if it be conceded that the petition is not sufficiently verified as to Shrader and Harvey, and even if it be conceded that the petitioners have not shown Shrader and Harvey to be creditors, I take it that Burdett alone, by whom it is verified, is entitled to appear and be heard.

3. I am asked to find that the facts and circumstances in this particular case limit and determine the principal place of business of the bankrupt company to have been at Grafton, in the state of West Virginia, for the six months preceding the filing of the petition in involuntary bankruptcy, and in support

of this contention my attention is called to the fact that all the assets of the company were in the state of West Virginia, that its mines were located in said state, that its principal works were located therein, that all of its employes lived in West Virginia, that the statutory requirements of neither West Virginia nor Pennsylvania were observed, and that the business transacted in Philadelphia was merely the business of a selling agency.

I have heretofore expressed my opinion with respect to the facts, and the authorities do not support the contention of the petitioners. Mathews v. Consolidated Slate Co. (D. C.) 15 Am. Bankr. Rep. 779, 144 Fed. 724; Matthews v. Consolidated Slate Co., 16 Am. Bankr. Rep. 407, 144 Fed. 737, 75 C. C. A. 603; Mathews v. Consolidated Slate Co. (D. C.) 16 Am. Bankr. Rep. 350, 144 Fed. 724; Matter of Duplex Radiator Co. (D. C.) 15 Am. Bankr. Rep. 324, 142 Fed. 906; Dressel v. The Lumber Co. (D. C.) 5 Am. Bankr. Rep. 744, 107 Fed. 255; In re Machine & Conveyor Co. (D. C.) 1 Am. Bankr. Rep. 421, 91 Fed. 630; Tiffany v. Milk Co. (D. C.) 15 Am. Bankr. Rep. 413, 141 Fed. 444.

In Matthews v. Consolidated Slate Co., cited supra, the corporation was a New Jersey corporation operating quarries in Vermont and New York, but having its executive offices and selling agency in Boston. The principal banking was done in Boston and supreme direction and control was exercised therefrom. Books of account were kept thereat, and the great bulk of its sales were there negotiated. It was held that Boston was the principal place of business of the company, and that the corporation was subject to the jurisdiction of the bankruptcy court for the district of Massachusetts.

In Matter of Duplex Radiator Co., cited supra, the corporation was a New Jersey corporation which had not obtained its certificate from the Secretary of the state of New York, permitting it to do business there, and was adjudged a bankrupt by the District Court of the United States for the Southern District of New York, upon proof that the principal place of business of the bankrupt was in that district.

In Tiffany v. Milk Co., cited supra, it was held that a company chartered under the law of the state of New Jersey and having a nominal office in that state in order to comply with the laws thereof, but having its principal place of business at Scranton, could be adjudged a bankrupt by the District Court of the United States for the Middle District of Pennsylvania, and this notwithstanding that six months prior to the proceedings in bankruptcy a fire had occurred which had destroyed its plant.

In Dressel v. Lumber Co., cited supra, it was held that notwithstanding the corporation was incorporated in another state, and a provision in the articles of its association named a place within that state as the place for its principal office, the corporation could be adjudged a bankrupt in North Carolina if its principal place of business was situated within that district.

In Matter of Machine & Conveyor Co., cited supra, the corporation was organized under the laws of Rhode Island, and having its plant thereat, but its general office in New York. It was adjudged a bankrupt in the latter district, notwithstanding the fact that during the greater part of the six months prior to the filing of the petition in bankruptcy the corporation did no business in Rhode Island; its works being shut down and its business there stopped, and it having been shown, however, that it did have a place of business in New York and did transact business thereat during the period in question.

I therefore conclude that, for the purpose of this reference, it is immaterial whether or not the company failed to comply with the statutory requirements of either the state of West Virginia or the state of Pennsylvania. Nor is it material that the company should have been mining and selling coal during the six months preceding bankruptcy, if, as has been found, it maintained its principal place of business in Philadelphia during that period, and that it matters not where its mines were located, or where its workmen lived, or whether or not its assets were held within the state of West Virginia.

4. If the finding of law and fact above referred to are correct, there can, of course, be no necessity for the appointment of an ancillary receiver in this district.

5. The general rule undoubtedly is that both courts ought not to proceed with independent hearings, and that, as between the two courts, the court in which

the petition was first filed ought, unless manifest ground of convenience be shown, to be accorded exclusive jurisdiction. In re Bridge & Iron Co. (D. C.) 13 Am. Bankr. Rep. 309, 133 Fed. 568; Matter of United Button Co. (D. C.) 12 Am. Bankr. Rep. 761, 132 Fed. 378.

I am asked to recommend that the order adjudging the coal company bankrupt be vacated on the ground of convenience. The burden of proof that such convenience would result is on the petitioning creditors. They have, I think, established the fact that in the course of the administration of this estate various questions are likely to arise, calling for an interpretation of the laws and decisions of West Virginia; but they have not, I think, established such a state of facts as requires the court which was first appealed to, and which rightfully assumed jurisdiction, to surrender it. The appeal is made in form by three creditors; but inasmuch as it is denied by the respondents that two of the persons named in the petition are creditors, and inasmuch as the only testimony in support of the petition is that of Burdett, it must, for the purposes of this reference, be assumed that the appeal for a change of jurisdiction is made by Burdett alone. It has not been shown that the majority of the creditors, in number or amount, whether secured or unsecured, desire a change of jurisdiction, or that they reside elsewhere than in Pennsylvania, or that they would be inconvenienced if jurisdiction is maintained, or that greater economy or convenience would result from it.

I therefore find as a conclusion of law the petitioners have failed to satisfy me by their proofs that it is my duty to recommend that the best interests of the estate require that the jurisdiction, rightfully assumed, should be vacated.

For the reasons above stated, I respectfully recommend that the petition filed by Samuel W. Shrader, Abraham W. Burdett, and William F. Harvey be dismissed, with costs, and that the costs of this reference shall be as follows:

| | |
|---|---|
| Theodore M. Etting, special referee | $100 00 |
| Stenographic charges | 55 50 |
| Total | $155 50 |

### Supplemental Report.

On behalf of Samuel W. Shrader certain exceptions have been filed with the referee and are appended hereto.

1. The first exception is, I think, immaterial. The endeavor of the petitioners is to effect a transfer of jurisdiction, and thus to necessarily divest the trustee of his title to the bankrupt property. He has executed a bond and assumed the duties devolving upon him as trustee. The trustee is, not like a receiver, a mere caretaker. He is the agent of the creditors. The statute invests him with the title of the bankrupt and makes him, not only quasi owner, but the owner pro hac of all the property and rights of action belonging to the bankrupt. In re Baber (D. C.) 9 Am. Bankr. Rep. 415, 119 Fed. 520.

I can see no reason to change my conclusions which will be found in my report.

2. The petitioners are in error in stating, in their second exception, that I found as a fact that "this corporation did not change its principal place of business." On the contrary, I found that whilst the principal place of business, as named in the company's charter, was situated in the city of Grafton, nevertheless, the executive office and principal place of business of the company had been in Philadelphia not only from the time the company commenced operating its mines, but also during the six months preceding its bankruptcy. And I further found that "during the six months preceding bankruptcy, the Philadelphia office was not only the principal office, but the only office maintained by the company during that period."

3. The petitioners are in error in stating, in their third exception, that I found as a fact that "offices were maintained at each of the company's mines in the state of West Virginia," without adding thereto that I further found that said offices had not been maintained during the six months preceding bankruptcy. The petitioners are also in error in stating, in the above ex-

ception, that I found that "the only business that had been transacted by said corporation was endeavoring to pay off the vendors' lien notes held by citizens of West Virginia, and in endeavoring to prevent litigation by West Virginia creditors." I found, as will appear in my report, that whilst the company never mined or sold coal during the six months preceding bankruptcy, it, nevertheless, transacted at its Philadelphia office certain business, the nature and character of which is recapitulated in the testimony found on the pages above referred to and which was other than that of paying off vendors' lien notes or endeavoring to prevent litigation.

4. With respect to the fourth exception, the cases referred to must speak for themselves. It is proper, however, that I should call attention of the court to the case of Marine Mach. & Conveyor Co. (D. C.) 1 Am. Bankr. Rep. 421, 91 Fed. 630, heretofore cited. My understanding is that residence, domicile, or principal place of business is a question of fact, and that the authority conferred by the charter is neither sufficient nor controlling. The cases cited supra, as well as the most recent publication on the subject, I think fully sustain this view. Remington on Bankruptcy, §§ 33, 35, 87.

5. With respect to the fifth exception, the schedules which were offered in evidence purport to show the residence of the holders of the vendors' lien notes, and their correctness in this respect was not challenged, excepting in the case of Samuel W. Shrader, whose residence, the testimony shows, was incorrectly stated in the schedules, and should have been stated as in Pennsylvania.

6. With respect to the sixth exception, the evidence does not show that all of the unpaid vendors' lien notes are held and owned by West Virginia creditors.

7. With respect to the seventh, eighth, and ninth exceptions, I do not deem it necessary to add anything to the views heretofore expressed in my report.

In conclusion I desire to say that I have carefully considered all of the foregoing exceptions, that I have reconsidered my report in the light of the exceptions, that, after making a careful and patient examination of the exceptions, I am compelled to adhere to the conclusions stated in my report, and I submit the exceptions to the judgment of the court.

I regret very much that counsel for petitioning creditors, after having been requested by me, should not have been willing to appear before me for the purpose of arguing the exceptions. They were requested to file exceptions with me, and were given notice that argument thereon would be heard on June 4, 1908. They filed exceptions, but declined to appear, and, in order that there may be no misunderstanding with respect to their position, I append hereto a letter addressed to me by G. H. A. Kunst, Esq., of counsel for petitioners, under date of June 3, 1908.

Watson, Diehl & Watson, for trustee.

G. H. A. Kunst, for excepting creditors.

J. Aubrey Anderson, for bankrupt.

J. B. McPHERSON, District Judge. From the facts found by the special referee, Theodore M. Etting, Esq., it follows that the principal place of business of the bankrupt was in the Eastern district of Pennsylvania during the six months preceding the filing of the petition, and therefore that this court had jurisdiction to entertain the proceeding, although the bankrupt is a West Virginia corporation. I agree also with the referee that the facts reported by him support the conclusion that the greater convenience of the parties would not be promoted by transferring the cause to the Northern district of West Virginia.

For the reasons given by the learned referee in his two reports, they are now confirmed, and it is hereby ordered that the petition of Abra-

ham W. Burdett et al., filed in this court on April 3, 1908, be refused, and that the petitioners therein pay the costs of the proceedings thereon, including the cost of the special reference. '