### In re McCARTHY PORTABLE ELEVATOR CO.

(District Court, D. New Jersey.   May 21, 1912.)

**1. Corporations (§ 308*)—Directors—Compensation—Resolution—Validity.**

Where the presence of the president of a corporation, who was also a director, was necessary to make a quorum of the board of directors at the time a resolution was passed fixing his salary at $500 a month, and he voted in favor of the resolution, it was void under the rule that a director cannot make with himself or for his own benefit a contract which will bind the company, and an agreement to pay the director a stipulated sum which depends on the director's own vote is void.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. § 308.*]

**2. Work and Labor (§ 4*)—Right to Compensation.**

Mere rendition of services does not necessarily carry the right to compensation, since, where the service is not performed on request of the person sought to be charged therewith, the circumstances of its rendition must be such that in law it will be presumed to have been rendered for the benefit of such party, and not for the party rendering it.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. §§ 3–7; Dec. Dig. § 4.*]

**3. Bankruptcy (§ 345*)—Services—Compensation—Claim—Priority.**

C., having patented certain alleged improvements in portable elevators, organized a corporation to exploit the device, which was a new product without commercial standing. The corporate capital was $1,000,000, $1 per share par value, and commenced business with $5 contributed by or on behalf of five directors, a large part of the stock having been voted to C. for his interest in certain United States letters patent on the invention. He also had the device patented in certain foreign countries, in which patents the corporation had no interest. The bulk of the stock was sold at 10 cents a share, and the money was not paid over to the treasurer of the company, being expended without specific authorization of the board of directors, which C. absolutely controlled, indiscriminately for his individual and the corporation's account. C. did not use all his time for the benefit of the corporation, but experimented on another device. *Held*, that C.'s services to the corporation were not beneficial to it so as to entitle him to recover therefor as against the corporation's creditors on bankruptcy of the corporation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 539, 540; Dec. Dig. § 345.*]

———

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. CORPORATIONS (§ 174\*)—LEGAL ENTITY.**

A corporation is a legal entity, and ordinarily will be treated as distinct from its membership, but a court of equity will not so consider it when the rights of the parties or creditors require other treatment.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 649–652; Dec. Dig. § 174.\*]

**5. CORPORATIONS (§ 542\*)—STOCKHOLDER'S DEALINGS.**

The relations of a stockholder to a corporation and to the public require good faith and fair dealing in every transaction between the stockholder and the corporation which may injuriously affect the rights of creditors or of the general public, and a rigid scrutiny will be made into all such transactions in the interests of creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2154–2160; Dec. Dig. § 542.\*]

In the matter of the bankruptcy proceedings of McCarthy Portable Elevator Company. On petition to review a referee's order allowing a claim of Fred C. Keeney. Petition granted and allowance reversed.

McDermott & Enright, of Jersey City, N. J., for Fred C. Keeney.
George H. Gilman, of New York City, for trustee.
A. Hubert Ste. Marie, of Jersey City, N. J., pro se.

RELLSTAB, District Judge. The bankrupt is a corporation organized under the laws of California. Fred C. Keeney is the assignee of Thomas J. McCarthy's claim against the bankrupt for $12,600. The proof of claim is made by Keeney, and he swears that the claim is for money loaned by McCarthy to the bankrupt. An itemized statement of debts and credits is annexed to such proof showing a running account covering the period beginning September 30, 1905, and ending March 14, 1907, with a balance of $12,600.95 in favor of McCarthy. The assignment to Keeney is dated March 15, 1907, and is said to be in consideration of $1 and other good and valuable consideration. On the credit side of the statement 10 items under different dates are for pay rolls aggregating $12,636.14, slightly more than the balance shown in such statement. The referee allowed claimant the sum of $10,180, of which $7,600 was compensation to McCarthy for services rendered "at the rate of $500.00 per month for the period during which such services were rendered." This allowance for compensation is alone challenged on this review. The referee did not determine in what capacity McCarthy rendered such services, but concluded that they "were well worth the amount of compensation claimed by him," viz., $500 per month. The proof of claim does not specifically allege any money was due McCarthy as compensation for services rendered, and the statement annexed thereto makes no reference to such compensation. The items "pay rolls" in such statement are said to include such compensation and the referee so considered it in making such allowance. The form and substance of the proof of claim and the consideration for, and character of, the assignment to Keeney, as well as the right of McCarthy to compensation, are attacked by the trustee. However, the conclusion I

have reached on the question of McCarthy's right to compensation on its merits makes it unnecessary to pass upon any other.

The bankrupt was incorporated on April 16, 1904. Its board of directors consisted of five members, of which McCarthy was one. On September 28, 1905, at an adjourned meeting of such board, at which only three members, including McCarthy, were present, he was elected president, and continued as such to the time of the institution of the bankruptcy proceedings. From the minutes of such meeting, the following resolution appears to have been adopted:

"On motion of Director Canfield, seconded by Director Chanslor and unanimously carried, it was ordered that the compensation of the president of the company be fixed at the sum of five hundred dollars per month, said compensation to be paid out of the funds of the said corporation, and to commence on the first day of October, 1905."

McCarthy, so far as this resolution is concerned, occupied a dual relation. He had a personal as well as an official interest—individual as well as corporate.

[1] There is some confusion among the cases as to what contracts between a company and a director or officer thereof are void or merely voidable. It is well settled, however, that a director cannot make with himself or for his own benefit a contract which will bind the company; and an agreement to pay a director a stipulated sum, which depends upon the vote of such director, is void, and no recovery can be based upon such contract. Gardner v. Butler, 30 N. J. Eq. (E. & A.) 702. Under the laws of California, the legal domicile of the bankrupt, which settles the powers of the board of directors in this respect, such resolution is void, and not merely voidable, as McCarthy's personal interest disqualified him not only from voting on the resolution, but also from furnishing the necessary presence at such meeting to constitute a quorum that an affirmative vote on such resolution might be had. Curtin v. Salmon River, etc., Co., 130 Cal. 345, 62 Pac. 552, 80 Am. St. Rep. 132. When this claim was last before the court, such resolution was declared void and the cause remanded to take further proof and to determine whether McCarthy in the particular circumstances of this case was entitled to compensation on a quantum meruit. The referee has so decided, and fixed it at the rate voted by such resolution.

[2] The mere rendition of service does not necessarily carry the right to compensation. Where not performed on request of the person sought to be charged therewith, the circumstances of its rendition must be such that in law it will be presumed to have been rendered for the benefit of such party, and not the party rendering it. It must be deserved. Porch v. Agnew Co., 70 N. J. Eq. 328, 61 Atl. 721; affirmed, 71 N. J. Eq. 305, 65 Atl. 485.

[3] Was McCarthy's relation to the company such as justifies the application of the doctrine of quantum meruit? The facts in this case establish beyond peradventure that the company was but the creature of McCarthy, and that he consistently treated it as such. It was incorporated with an authorized capital stock of $1,000,000, $1 per share par value. It began with a cash capital of $5 contributed by

or on behalf of the five directors—one share for each. Eight hundred and ninety-nine thousand nine hundred and ninety-five of such 1,000,-000 shares of stock were voted to McCarthy for his interest in certain United States letters patent issued to him for certain alleged improvements in portable elevators. The company was organized for the purpose of exploiting this patented device, an entirely new product without commercial standing. The directors were but his instruments, dummies carrying out his wishes. William B. Whitman, the secretary and treasurer of the company, who held 5,000 shares given him by McCarthy for services rendered to him personally, said he was but the nominal secretary, and that he "attended, perhaps, four meetings all told"; that McCarthy "was the active man at all times, * * * did all the work, all of the business"; that he had general charge of the mechanical part of the business, raised the money and standing of the company. McCarthy said: "I was the president, manager, chief draftsman, money raiser. I was everything there was." He raised money by borrowing, and selling his own and the company's stock.

The bulk (almost all) of the stock was sold at 10 cents a share. Such moneys were not paid over to the treasurer of the company, and they were expended without specific authorization of the board of directors indiscriminately for his individual and the company's account. Credits were frequently made in the books without voucher at the direction of McCarthy. The referee in passing upon these expenditures disallowed a great many for lack of proof.

The first entry on the books as compensation to McCarthy appears under date of July 12, 1906. In the statement annexed to the proof of claim it appears under the head of "Pay Rolls" $4,500. This and the subsequent credits under that head are said to be for salary, and are so charged on the company's journal. The first item is said to cover the period from October 1, 1905, to July 1, 1906. These entries were made at the direction of McCarthy on the authority of the void resolution of September 29, 1905. The company had no bank account; McCarthy furnishing the money when needs were pressing. He issued the company's notes at will, and used their proceeds without advising the bookkeeper. On March 14, 1907, notes aggregating more than $22,000 theretofore issued by McCarthy were for the first time charged upon the books of the company, at the direction of McCarthy, who, at that time, was preparing for the inevitable insolvency proceedings. The bookkeeper was thus kept in ignorance of the greater part of the company's liabilities until just before the bankruptcy proceedings were begun.

McCarthy, during the period for which he has been allowed $500 per month, did not employ his whole time in the perfecting and commercializing of such patented device. A good part of his time and efforts were devoted to experimenting with an automobile wheel which he hoped to patent, and in which the company had no interest. The patented portable elevator device of which the company held the American letters patent was patented in Germany, Denmark, Norway, and Sweden, in which patents the company had no interest, and which were owned by McCarthy and his associates. The work done by him

in experimenting with such patented device, with the view of making it a practical and commercial success, and in seeking a market for it, was, therefore, not in the exclusive interest of the company, as such work, if successful, would inure to the benefit of the owner of the foreign patents as well. Furthermore, the period covered by the compensation allowed began after all the assets of the company (its shares of the capital stock) had been exhausted. There never was a fund of the company such as contemplated by the resolution of September 29, 1905, out of which McCarthy could look for the salary therein voted him, even if such resolution were valid. Whatever was done thereafter was on moneys realized on the sale of McCarthy's individual holdings of the company's capital stock, or on borrowed capital, in a hopeless effort to make his patented device a commercial success. The company, except in form and name, was McCarthy. His associates, as directors and officers of the company, were but instruments responsive to his will. They and he recognized that the company was but a convenience for carrying out his purposes, and they acted accordingly.

[4] A corporation is a legal entity, and ordinarily will be treated as distinct from its membership. But a court of equity will look beyond this technical doctrine of existence independent of its shareholders when the rights of the parties require it. Morawetz on Private Corporations (2d Ed.) §§ 1, 227, 229. Especially is this true with respect to the rights of creditors. Id. 231, 818.

[5] "The relations of a stockholder to the corporation, and to the public who deal with the latter, are such as to require good faith and fair dealing in every transaction between him and the corporation of which he is part owner and controller, which may injuriously affect the rights of creditors or of the general public, and a rigid scrutiny will be made into all such transactions in the interest of creditors." Sawyer v. Hoag, Assignee, 17 Wall. 610, 21 L. Ed. 731. If McCarthy had not formed a corporation, but sought to perfect and market his patented device as an individual, no compensation would have been allowed him for services rendered in case of his bankruptcy. Why should he be allowed such compensation for performing the same services for a like purpose simply because he did it as an officer of a corporation, which was his own creature and made to serve his individual interest? To do this would be to declare that the form rather than the substance, the shadow rather than the real, governs the right. The law is not so imbecile.

In the facts of this case—the purpose of the company's incorporation, its dominancy by McCarthy, its exploitation by him and in his interest—no legal basis for an implied assumpsit to pay him for services rendered exists. The legal entity of the corporation thus formed and exploited (which corporation, so far as McCarthy was concerned, was a self-serving device) will be treated as a fiction as between him and the creditors of the company; and, as against the latter, no compensation will be allowed McCarthy for such services.

The referee's allowance of $7,600 as compensation is reversed.