In re WENATCHEE–STRATFORD ORCHARD CO.

(District Court, W. D. Washington, S. D.   May 15, 1913.)

No. 1,296.

1. BANKRUPTCY (§ 123*)—ELECTION OF TRUSTEE—RIGHT TO VOTE.
   Where the foundation of a claim against a bankrupt is a judgment by confession based on notes of the bankrupt, the fact that the validity of some of the notes is contested by other creditors is not ground for refusing the creditor the right to vote for trustee at least to the extent of the part of his judgment which is undisputed.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 171–179; Dec. Dig. § 123.*]

2. JUDGMENT (§ 828*)—BANKRUPTCY—JUDGMENT OF STATE COURT—RIGHT TO CONTEST.
   Under the American decisions a judgment of a state court against a bankrupt, if rendered by a court having jurisdiction and regular on its face, may be attacked in the bankruptcy proceedings for fraud or collusion, but not otherwise.
   [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1504–1509; Dec. Dig. § 828.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. JUDGMENT (§ 828\*)—JUDGMENT OF STATE COURT—BANKRUPTCY.**

The president of a corporation and his wife, who constituted two of the three directors, at a special meeting of which the third director had no notice, voted the president a salary for past services, and he executed the note of the corporation to himself for the amount. He transferred the note after maturity and afterward confessed judgment thereon for the corporation in favor of the transferee. *Held*, that the transaction by which the note was given was without authority and presumptively fraudulent, and the judgment thereon subject to attack in bankruptcy proceedings against the corporation; the claim for salary to be determined on its merits.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1504–1509; Dec. Dig. § 828.\*]

**4. BANKRUPTCY (§ 16\*)—CORPORATIONS—DISTRICT OF ADJUDICATION—PLACE · OF BUSINESS.**

A district court within whose jurisdiction a corporation has in fact had its principal place of business for the preceding six months has jurisdiction to adjudge such corporation a bankrupt, although its articles of incorporation fix its principal place of business in another jurisdiction.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 20; Dec. Dig. § 16.\*]

In the matter of the Wenatchee-Stratford Orchard Company, bankrupt. On review of decision of referee. Returned to referee with directions.

Winfield R. Smith, of Seattle, Wash., for petitioning creditors Hoffman & Prowell.

Walter M. Harvey, of Tacoma, Wash., for respondent creditors and trustee.

CUSHMAN, District Judge. This matter is before the court upon a petition of certain creditors to review the decision of the referee allowing a claim on confession of judgment and allowing the same to be voted upon the selection of a trustee. It is also before the court upon the motion of such creditors to transfer the proceedings from the Southern to the Northern division of the district, upon the ground that its principal place of business is in the Northern division.

The referee certifies:

"The gist of said exceptions being that the judgment upon which the claim of said Woolfolk was based was a judgment by confession, and that such confession was collusive, without authority, and prejudicial to the rights of other creditors and stockholders, and that the promissory notes upon which said judgment was based, were without consideration. That upon this view of the case, the referee went into an examination of the claim presented, and heard the testimony offered by the objecting creditor, and that produced by the claimant, L. H. Woolfolk, in support of his claim.

"It appeared from such examination: That Mr. G. M. Brasfield became president and treasurer of the bankrupt corporation on about the 18th of September, 1911. That his wife, Virgie Brasfield, was a director in the company, as well as himself, and that the third director was the objector, F. W. Hoffman, who was during all this time the secretary. That the board consisted of the three, G. M. Brasfield, Virgie Brasfield, and F. W. Hoffman. That F. W. Hoffman, the secretary, resided at Wenatchee, and G. M. Brasfield and his wife, Virgie, resided at Tacoma. That G. M. Brasfield, as the president, was empowered by the by-laws to manage the whole affairs of the corporation,

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and that he actually did exercise complete control over the business affairs of the corporation during his incumbency as president and treasurer up to the date of the adjudication. See testimony of Hoffman, record, pages 10, 11, and 12. That the bankrupt, by Brasfield's predecessor, issued notes of the company to the extent of about $7,590 at 8 per cent. interest, some to himself, and some to Brasfield, and that Brasfield bought from his predecessor the notes issued to himself·known as the King notes, six certain notes. That Brasfield, during his incumbency, had issued to himself, for money furnished by him for the bankrupt, notes in the sum of $8,706.51. That he also during his incumbency negotiated three loans from the Scandinavian-American Bank of Seattle, in the total amount of $15,000, and suffered an overdraft of $75.77, and issued the notes of the bankrupt company to the said bank, in that amount. That in his negotiations with the said bank in the obtaining of said loans, he personally indorsed the notes of company given to the bank for the loan, and indorsed to the bank, as collateral to said loan, the notes of the bankrupt bought from King, his predecessor, the notes issued to him by the company through King, his predecessor, and the notes issued to him for money furnished the company by himself, all of which notes, including the notes given to the bank, were ratified by the full board of directors at a formal meeting of the board held in Tacoma, on January 30, 1913. That at said meeting on January 30, 1913, the board authorized a salary to the president of $1,000 per month, from the date of his election, by a vote of two of the trustees, Brasfield, himself, and his wife; Director Hoffman voting in the negative. Afterwards at a special meeting held at Tacoma, and no one present except Brasfield and his wife, a resolution was passed reducing the allowance of salary at $1,000 per month during the time, and entering a resolution authorizing a salary of $9,840 for the whole time. Record, p. 19. At the last stockholders' meeting held about the 18th of December, 1911, at which time Brasfield became president, a resolution was adopted by the stockholders, providing that no officer of the company should have a salary, except the president; that the president should receive a compensation of $—— per annum, payable per ——. See Record, pp. 26 and 27. Upon passing of the resolution authorizing $9,840 salary to the president, Brasfield as president issued notes to himself for the same, and indorsed the said notes to the Scandinavian-American Bank, or the claimant, L. H. Woolfolk, as additional collateral to the aforesaid loans.

"It was conceded that, in the judgment complained of, L. H. Woolfolk was the assignee of the Scandinavian-American Bank, and the holder of all of the aforesaid notes. It was also conceded that said G. M. Brasfield was the owner of 69 per cent. of the capital stock of the bankrupt corporation. It was contended that there was collusion between L. H. Woolfolk and said Brasfield in the institution of said suit, and the confession of said judgment; but there was nothing in the testimony, nor in the conditions surrounding the transaction, to indicate to the referee that any such collusion existed. The transaction with the bank seems to be against the interests of the said Brasfield. While the judgment confessed exceeds $46,000, and the loan from the bank was slightly more than $15,000, it would appear that the bank would become the trustee of the said Brasfield for any collections it would make over and above its $15,000, yet the bankrupt estate would have to pay a dividend of about 40 per cent. before the bank would have recovered its $15,000, so that Brasfield would obtain nothing from the bank by reason of said negotiations until after the bank has been fully paid out of all of the proceeds of the notes it holds, and if the estate should not pay more than 40 per cent., Brasfield may never get anything, while all other creditors would get a dividend of 40 per cent., if so much were paid, on all other claims, so it is hard for the referee to see wherein Mr. Brasfield would gain in such an alleged conspiracy."

The following authorities are cited by the petitioning creditors on the petition for review: Adams v. Crosswood Printing Co., 27 Ill. App. 313; Hoyt v. Thompson, 5 N. Y. 321; Joliet Elec. L. & P. Co. v. Ingalls, 23 Ill. App. 45; Stokes v. New Jersey Pottery Co., 46 N.

J. Law, 237; Arizona Min. Co. v. Benton, 12 Ariz. 373, 100 Pac. 952; Doe v. N. W. Coal & Trans. Co. (C. C.) 78 Fed. 62, 66; National L. & I. Co. v. Rockland Co., 94 Fed. 335, 36 C. C. A. 370; Dial v. Co., 52 Wash. 81, 85, 86, 100 Pac. 157; Home, etc., Co. v. Tillman, 125 Ga. 172, 53 S. E. 1019, 1022; Caho v. Ry. Co., 147 N. C. 20, 60 S. E. 640; Utica & Co. v. Waggoner, etc., Co., 166 Mich. 618, 132 N. W. 502; O'Brien v. O'Brien Boiler Works Co., 154 Mo. App. 183, 133 S. W. 347; Brophy v. American Brew. Co., 211 Pa. 596, 61 Atl. 123; Grafner v. Railway Co., 207 Pa. 217, 56 Atl. 426; Doernbecher v. Columbia City Lbr. Co., 21 Or. 573, 28 Pac. 899, 900, 28 Am. St. Rep. 766; Vaught v. Ohio County Fair Co. (Ky.) 49 S. W. 426–427; Singer v. Salt Lake City Copper Mfg. Co., 17 Utah, 143, 53 Pac. 1024, 1028, 70 Am. St. Rep. 773; Hatch v. Lucky Bill Min. Co., 25 Utah, 405, 71 Pac. 865; Broughton v. Jones, 120 Mich. 462, 79 N. W. 691; Bank of National City v. Johnston, 133 Cal. 185, 65 Pac. 383; Holcombe v. Trenton White City Co., 80 N. J. Eq. 122, 82 Atl. 618; Hill v. Rich Hill Coal Min. Co., 119 Mo. 9, 24 S. W. 223; Jacobson v. Brooklyn Lbr. Co., 184 N. Y. 152, 76 N. E. 1075, 10 Am. & Eng. Enc. of Law, 790; Steel v. Gold Fissure Gold Min. Co., 42 Colo. 529, 95 Pac. 349, 351, 126 Am. St. Rep. 177; McNulta v. Corn Belt Bank, 164 Ill. 427, 45 N. E. 954, 56 Am. St. Rep. 203; Camden Land Co. v. Lewis, 101 Me. 78, 63 Atl. 523; McConnell v. Combination M. & M. Co., 30 Mont. 239, 76 Pac. 194, 104 Am. St. Rep. 703; Adams v. Burke, 102 Ill. App. 148; Ritchie v. People's Tel. Co., 22 S. D. 598, 119 N. W. 990; State v. Manhattan Rubber Co., 149 Mo. 181, 50 S. W. 321, 325; Monmouth Inv. Co. v. Means, 151 Fed. 159, 80 C. C. A. 527; Ravenswood S. & G. Ry. Co. v. Woodyard, 46 W. Va. 558, 33 S. E. 285; Davids v. Davids, 135 App. Div. 206, 120 N. Y. Supp. 350.

The following authorities are cited by the respondent creditors on petition for review: Gilman v. Heitman, 137 Iowa, 336, 113 N. W. 932; McDonald v. Chisholme, 131 Ill. 273, 23 N. E. 596; Chamberlin v. Mammoth Min. Co., 20 Mo. 96; Ford v. Hill, 92 Wis. 188, 66 N. W. 115, 53 Am. St. Rep. 902; Clark & Marshall on Corporations, p. 2141; Miller v. Oregon City Mfg. Co., 3 Or. 24; Miller v. Bank of British Columbia, 2 Or. 291; Irvine v. Randolph Lbr. Corporation, 111 Va. 408, 69 S. E. 350; White v. Crow (C. C.) 17 Fed. 98, affirmed 110 U. S. 183, 4 Sup. Ct. 71, 28 L. Ed. 113; Van Fleet on Collateral Attack, § 17; Robinett v. Mitchell, 101 Va. 762, 45 S. E. 287, 99 Am. St. Rep. 928; National Loan & Inv. Co. v. Rockland Co., 94 Fed. 335, 36 C. C. A. 370.

The following authorities are cited by the moving creditors on the motion to transfer: Rossie Iron-Works v. Westbrook, 59 Hun, 345, 13 N. Y. Supp. 141; Elmira Steel Co. (D. C.) 109 Fed. 456; Loveland on Bankruptcy (4th Ed.) 117.

The respondent creditors cite the following authorities on the motion to transfer: Collier on Bankruptcy, pp. 26, 27; Dressel v. North State Lbr. Co. (D. C.) 107 Fed. 255; Tiffany v. La Plume Condensed Milk Co. (D. C.) 141 Fed. 444; In re Pennsylvania Consolidated Coal Co. (D. C.) 163 Fed. 579; In re Magid-Hope Silk Mfg. Co. (D. C.)

110 Fed. 352; In re Marine Machine & Conveyor Co. (D. C.) 91 Fed. 630.

Upon the hearing it was admitted that all of the money for which judgment was confessed was actually owing by the corporation, except a note for $9,840, on account of back salary of Brasfield as president.

[1] As proceedings in bankruptcy are administered according to principles of equity, Mr. Woolfolk, either as judgment creditor, or as holder of between $30,000 and $35,000 of the uncontested notes, had a right to vote for the trustee. With this undisputed amount voted, there was a majority of the creditors, in number and amount, voting for the trustee. Under such circumstances, it would be inequitable to treat the judgment as an entirety and disallow it in toto, if any part of the recovery allowed therein should be found unwarranted.

The Washington statute provides:

"When the action is against the state, a county or other public corporation therein, or a private corporation or a minor, the confession shall be made by the person who, at the time, sustains the relation to such state, corporation, county, or minor as would authorize the service of a notice (summons) upon him. * * *" 1 Rem. & Bal. Code, § 414.

It is therefore clear that Brasfield, as president of the corporation, had authority to confess judgment generally, as he was an officer upon whom service of summons could be had. 1 Rem. & Bal. 226 (8).

The salary note was a demand note, and, under the circumstances in which it was given by the corporation, through its president, to himself, it is clear that it was due immediately and that the bank and the judgment creditor, Woolfolk, took it after maturity. 7 Cyc. 849 (2).

The question of good faith between the creditor, Woolfolk, and the president of the corporation in confessing judgment; the authority of the president of the corporation and his wife (being two of the three directors) to fix the amount of and vote him back salary without the consent, in the absence of and without notice to the other director—were, without objection or exception, submitted to the referee, considered and determined by him.

There appears to be authority for this course:

[2] "(2) Impeaching Judgments. Here the English doctrine is much broader than our own. Full faith and credit being necessarily given to the judgments of the state courts when pleaded in the federal courts, it was, under the former law, held that a judgment of a state court could not be impeached when presented as a claim in bankruptcy, but resort must be had to the state court. That it is conclusive between the bankrupt and the judgment creditor is elementary. But where the rights of general creditors have intervened, the English rule that such a judgment is but prima facie evidence of a provable debt is fairer. The law in the United States seems, however, to be that the trustee of a creditor may attack it in the bankruptcy proceeding for fraud or collusion, but not otherwise. A judgment not regular on its face, or by a court which did not have jurisdiction of the subject-matter, may of course be attacked anywhere; but jurisdiction need not affirmatively appear, nor can the recitals of the judgment, as a rule, be contradicted in a collateral proceeding." Collier on Bankruptcy (9th Ed.) p. 861.

"Validity. (a) In General. A judgment entered upon the confession of defendant may be impeached for fraud by other creditors whose rights or remedies are affected by it, although, if no fraud or deception was practiced on

IN RE WENATCHEE-STRATFORD ORCHARD CO.      969

the debtor, it is binding as between the original parties. As to the proceedings in entering or confessing the judgment, although there are some decisions to the effect that a judgment which does not conform to the requirements of the statute is absolutely void, the better rule appears to be that if there has been an attempt to comply in all respects with the law, the judgment is at most only voidable at the instance of creditors, although the execution of such attempt be informal, or defective; but the total omission of any of the steps prescribed by the statute will render the judgment entirely inoperative and void. Where the statute provides that there shall be filed with a confession of judgment a statement of the facts out of which the indebtedness arose, it has been held that the filing of a defective or insufficient statement will not render the judgment void as between the parties; as against other creditors it raises a presumption of fraud, and they may attack it on this ground; but plaintiff may sustain his judgment by proving that it is fair, and not fraudulent or collusive, and warranted by the facts actually existing although such facts were not included in the statement." 23 Cyc. pp. 720, 721.

This being the state of the record, the same course will be followed and the salary note considered on its merits, without going into the questions of collateral attack and the faith and credit to be accorded the judgment of the state courts generally.

[3] It is concluded there is no authority in an agent, such as the director and president of a corporation, to thus deal with himself, to his own advantage and to the corresponding detriment of others whom he represents; that the salary transaction was presumably fraudulent. If such an officer can, under the circumstances, recover at all, it is upon the quantum meruit, and not upon his contract with himself. 10 Cyc. p. 759 et seq.

[4] The amended articles of incorporation fixed the principal place of business of the corporation at Seattle, in the Northern division of this district. It is contended that this course is conclusive upon this question and, under section 53 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1101 [U. S. Comp. St. Supp. 1911, p. 150]) and subdivision 1, § 2 of the Bankruptcy Act, giving courts of bankruptcy jurisdiction "to adjudge persons bankrupt who have had their principal place of business, resided or had their domicile within their respective territorial jurisdictions for the preceding six months, or the greater portion thereof" (Act July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420]), the proceedings will only lie in the Northern division of this district, and that the cause should be transferred thereto.

It appears indisputably that, as a matter of fact, all of the business of the bankrupt was transacted from its offices at Tacoma, in the Southern division, for the six months preceding the filing of the petition to be adjudged a bankrupt. The fact, rather than the declaration in its articles, is controlling. Collier on Bankruptcy (9th Ed.) p. 33, § 2; Dressel v. North State Lbr. Co. (D. C.) 107 Fed. 255; In re Pennsylvania Consol. Coal Co. (D. C.) 163 Fed. 579.

The referee will proceed in accordance with this decision.