7 F.Supp. 785 (1934)
In re BURNTSIDE LODGE, Inc.
COOK et al.
v.
MILLER.
District Court, D. Minnesota, Fifth Division.
August 4, 1934.
Maurice F. Lord, of Aurora, Ill., for claimants.
M. H. Greenberg, of Eveleth, Minn., for trustee.
BELL, District Judge.
The bankrupt was incorporated in the state of South Dakota March 28, 1928. The articles of incorporation provided for a capital stock of $50,000 divided into 500 shares of the par value of $100 each. The incorporators and the first board of directors named in the articles of incorporation were A. E. Helmick and O. C. Miller of Minneapolis, Minn., and a citizen of Huron, S. D. Apparently the South Dakota member never attended a meeting of the board of directors and no stock was ever issued to him.
The first meeting of the directors was held at Minneapolis May 1, 1928, at which time A. E. Helmick was elected chairman and O. C. Miller secretary. The former served during the business career of the corporation; the latter until August, 1929, when he was succeeded by R. A. Ostram. A resolution was adopted authorizing the issuance of one share of stock to each of these parties for services rendered. The share of stock issued to Miller on his resignation as secretary was assigned to Ostram.
The first meeting of stockholders also was held May 1, 1928, when the issuance of 235 additional shares of stock was authorized as follows: 47½ shares to each Harold G. Cook and Bessie W. Cook, his wife, and 140 shares to Elfreida Stamm, an aunt of Harold G. Cook. The consideration for the stock issued to the Cooks was the transfer of real estate owned by them jointly to a party from whom the corporation purchased Burntside Lodge, a resort property near Ely, Minn. The consideration for the stock issued to Elfreida Stamm was for $14,000 cash lent by her to *786 Harold G. Cook. Only 237 shares of stock were ever issued.
At the first meeting of stockholders, Harold G. Cook was elected treasurer and manager at a salary of $3,600 per year, and Bessie W. Cook was elected assistant treasurer and assistant manager at a salary of $2,400 per year. A resolution authorizing these salaries was adopted by the directors at their meetings in 1928, 1929, and 1930, but no resolution authorizing them was adopted for the years 1931 and 1932. No credit for these salaries was entered in the books of the company, but money was advanced to them from time to time and their personal expenses were paid out of the funds of the company. According to the referee's summary of the evidence, Elfreida Stamm at no time lent money direct to the company, but she did lend a considerable sum to Harold G. Cook, who invested it in the business.
The Cooks entered into possession of Burntside Lodge in the spring of 1928 and conducted a resort business therein until December 14, 1932, when the petition in bankruptcy was filed. The adjudication was on January 21, 1933. The property consisted of 56 buildings, including a main lodge, cabins, and a garage for 40 cars, and 45 boats, consisting of 2 launches, rowboats, and canoes. There were accommodations for 125 guests. The gross income of the business in 1928 was $31,000, in 1929 $36,000, in 1930 $38,000, in 1931 $31,000, and in 1932 $16,000. When the petition in bankruptcy was filed the business was insolvent and heavily involved.
The minutes of the company at the first meeting of stockholders on May 1, 1928, recited the fact that the corporation had purchased the Burntside Lodge property on a contract for deed dated March 12, 1928, that the vendor had agreed to accept as a part of the purchase price real estate owned jointly by the Cooks, and that the conveyance as a convenience should be made direct to the vendor. The minutes at that meeting also showed that Elfreida Stamm had advanced certain sums and the issuance of stock of the par value of $14,000 to her was authorized.
Harold G. Cook filed a claim for salary from May 1, 1928, to December 15, 1932, of $16,650, and cash and other advances of $910, less credits of $12,915.34, or for a balance of $4,644.66. This claim was disallowed by the referee.
Bessie W. Cook filed a claim for salary from May 1, 1928, to December 15, 1932, of $11,100, and cash advanced of $66.47, less credits of $732.18, or for a balance of $10,434.29. This claim was disallowed by the referee.
Elfreida Stamm filed a claim of $11,549.68 for moneys advanced to the bankrupt company, less credits of $5,264.26, or for a balance of $6,285.42. This claim was also disallowed by the referee on the ground that the moneys were loaned by claimant direct to Harold G. Cook and that the money was paid to the bankrupt by Cook. After this ruling was made by the referee, Cook filed a supplemental claim for the $6,285.42 which was disallowed by the referee.
Paul Miller, the trustee, contested these claims, whereupon petitions for review were filed by the claimants.
At the hearing before the referee testimony was taken, but it was not transcribed and does not accompany the referee's certificate and summary of the evidence. Therefore, there is before the court the order and summary of the evidence of the referee, the claims and itemized statements of the claimants, the trustee's objection to the claims, and the exhibits consisting of the books and records of the bankrupt. The court has stated the facts from these documents.
Claimants assert that the hearing before the referee was conducted in an informal manner, that hearsay evidence was received, that the best evidence rule was disregarded, that claimants offered competent evidence which was excluded, that the findings of the referee were not based on legal evidence, and that the summary of the evidence by the referee is not a fair statement of the evidence. There is nothing in the record before the court to support these assertions, and it was the duty of the claimants to produce such a record, if one existed.
The procedure is contained in General Order in Bankruptcy No. 27 (11 USCA § 53) and section 39a (5) of the Bankruptcy Act (11 USCA § 67 (a) (5). When the parties do not agree on the record embodying the evidence, or the substance thereof, obviously it is the duty of the referee, when a petition for a review is filed, to compile the record and certify it with a summary of the evidence to the court. If any party is not satisfied with the contents of the record and summary of the referee, timely objections should be made and amendments proposed. Although ample notice and time were given in this case, no such action was taken by claimants; consequently, the court is compelled to act on the record as it stands.
*787 Where the evidence is not reported, the findings of the referee are conclusive unless they appear to be manifestly erroneous on the face of the report. In re Runnymede Finance Co. (C. C. A.) 64 F.(2d) 169; In re Nickerson (D. C.) 279 F. 572; In re Prentice (D. C.) 267 F. 1019, 46 A. B. R. 38; In re Golub (D. C.) 245 F. 512, 39 A. B. R. 810; In re Boston French Range (D. C.) 235 F. 916, 37 A. B. R. 508; Collier on Bankruptcy (13th Ed.) p. 970.
Findings of fact by a referee in bankruptcy are presumed to be correct until the contrary is shown, and the burden of proof rests on the one objecting thereto. In re Schultz & Guthrie (D. C.) 235 F. 907, 37 A. B. R. 604; In re Elmore Cotton Mills (D. C.) 217 F. 810, 33 A. B. R. 544; Collier on Bankruptcy (13th Ed.) p. 966.
The court is unable to discover manifest error on the face of the record. Claimants have not pointed to such error, or to abuse of discretion, or even to a decisive question of fact that they contend was not supported by the evidence and that might justify the court in ordering a rehearing. The court, therefore, must assume that the facts stated by the referee are sustained by the evidence.
Claims of relatives, likewise claims of stockholders, directors, and officers of corporations properly may be allowed against a bankrupt estate; but such claims are subjected to a more rigid scrutiny. In re Wenatchee-Stratford Orchard Co. (D. C.) 205 F. 964; Collier on Bankruptcy (13th Ed.) pp. 1379-1383; Remington on Bankruptcy, § 980.
The relations of a stockholder to a corporation and to the public require good faith and fair dealing in every transaction between the stockholder and the corporation which may injuriously affect the rights of creditors and the general public, and a careful examination will be made into all such transactions in the interests of creditors. In re McCarthy Portable Elevator Co. (D. C.) 196 F. 247.
The Cooks from the inception of the corporation's existence to the date of its bankruptcy were the real parties in interest if not the actual incorporators, and the purpose of the corporation was to purchase and operate Burntside Lodge. It is significant that before the corporation was organized they entered into a contract for the purchase of the lodge and to transfer to the vendor as a part of the purchase price real estate owned by them. In addition to this, they borrowed money from Elfreida Stamm before the corporation was organized to use in the business. Obviously they intended to engage in the resort business, but for some reason preferred to do so in the name of a corporation rather than in their individual names. One of them became the treasurer and manager; the other assistant treasurer and assistant manager. They took charge of the property, conducted its business, controlled its affairs, received the benefits, and incurred the liabilities. They, in effect, were the corporation.
The contention that three persons whose names were used in the articles of incorporation were interested parties cannot be sustained. They invested nothing in the business, received nothing from it, and the conclusion that their names were used as a matter of convenience is inevitable.
There is no evidence indicating that Elfreida Stamm ever attended a stockholders' meeting, took any part in the management of the affairs of the corporation, or had any control over the business. Her loan to Cook was a personal transaction between her and him, and her claim is against him and not the bankrupt estate of the corporation.
If the business had not been incorporated and the Cooks had conducted the enterprise personally, they would not have been allowed compensation for services in the event of bankruptcy, and there is no cogent reason why they should be paid when the same service is rendered as an officer and manager of a corporation of their own creation and to serve their own interests. To allow claims under such circumstances in effect would permit bankrupts to collect on claims against their own bankrupt estate. It would give effect to form rather than to substance, to the letter of the law rather than the spirit and purpose of it.
In the case of Wenatchee-Stratford Orchard Co., supra, it was held that where the president of a corporation and his wife, who constituted two of three directors, voted a salary to the president, the transaction was presumably fraudulent.
Generally, a corporation is regarded as a legal entity, but courts of equity will ignore this fiction when it is used as an instrumentality to defeat the rights of creditors, justify a wrong, or perpetrate a fraud. Majestic Co. v. Orpheum Circuit, Inc. (C. C. A.) 21 F. (2d) 720; Finch Co. v. Robie (C. C. A.) 12 F.(2d) 360; Page v. Arkansas Natural Gas Corporation (C. C. A.) 53 F.(2d) 27; In re Eastern Palliament Corporation (C. C. A.) 67 F.(2d) 871; Backus v. Finkelstein (D. *788 C.) 23 F.(2d) 531; Central Republic Bank & Trust Co. et al. v. Caldwell et al. (C. C. A.) 58 F.(2d) 721; In re McCarthy Portable Elevator Co. (D. C.) 196 F. 247.
In re Rieger, Kapner & Altmark (D. C.) 157 F. 609, the court said: "The doctrine of corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not in a proper case ignore it to preserve the rights of innocent parties or to circumvent fraud."
In Anthony et al. v. American Glucose Co., 146 N. Y. 407, 41 N. E. 23, we find: "We have of late refused to be always and utterly trammeled by the logic derived from corporate existence, where it only serves to distort or hide the truth."
The court is constrained to hold that the bankrupt corporation was merely an instrumentality of the claimants, a creature for their own use and convenience, and that to allow their claims would amount to a legal fraud on the creditors. It is not contended or held that there was actual fraud, but that is not necessary to sustain this decision.
The claims properly were disallowed by the referee, and his order to that effect should be confirmed. It is so ordered.